USA PETROLEUM COMPANY,
Plaintiff–Appellant,

v.

ATLANTIC RICHFIELD COMPANY,
Defendant–Appellee.

No. 87–5681.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 16, 1992.

Filed Aug. 12, 1992.

Withdrawn from Submission
March 17, 1993.

Resubmitted July 7, 1993.

Opinion Withdrawn Jan. 6, 1994.

Order and Opinion Decided Jan. 6, 1994.

Alicia Rosenberg, Blecher & Collins, Los Angeles, CA, for plaintiff-appellant.

Ronald Redcay, Arnold & Porter, Los Angeles, CA, for defendant-appellee.

Before: ALARCÓN, NELSON, and REINHARDT, Circuit Judges.

## ORDER

The Petition for Rehearing is granted. The opinion filed on August 12, 1992, is hereby withdrawn and the following opinion substituted in its place. The suggestion for reconsideration en banc is therefore moot.

## OPINION

D.W. NELSON, Circuit Judge:

Atlantic Richfield Co. ("ARCO") is one of the "major" oil companies; USA Petroleum Co. ("USA") is an "independent" gasoline marketer. USA alleged that ARCO and its dealers conspired to drive USA and other independents out of the retail gasoline market by agreeing to set retail gasoline prices "below market levels" and contends that this vertical agreement to fix maximum resale prices violates section 1 of the Sherman Act, 15 U.S.C. § 1.

USA appealed from the decision of the district court granting summary judgment in favor of defendant ARCO on the antitrust claims. We reversed, holding that USA had standing to challenge ARCO's alleged vertical maximum resale price maintenance scheme. *See USA Petroleum v. Atlantic Richfield Co.*, 859 F.2d 687, 697 (9th Cir. 1988). The Supreme Court in turn reversed the judgment of this court, holding that a competitor does not have standing to challenge such a scheme unless it amounts to "predatory pricing." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 339, 110 S.Ct. 1884, 1891, 109 L.Ed.2d 333 (1990). On remand, USA argues that the grant of summary judgment still must be reversed on the alternative ground that the district court wrongly dismissed USA's Sherman Act section 1 claims. We disagree, and now affirm the judgment of the district court.

## I. Factual and Procedural Background

USA filed this antitrust action in 1983, alleging that ARCO had agreed with its independent dealers to set below-market prices in the retail gasoline market in an effort to drive independent producers like USA out of business. USA alleged that ARCO's conduct violated the antitrust laws in two ways. First, USA asserted that an agreement to set maximum resale prices is illegal per se under section 1 of the Sherman Act. Second, USA alleged that ARCO's prices were "predatory" and constituted an attempt to monopolize in violation of section 2 of the Sherman Act, 15 U.S.C. § 2. On April 28, 1986, USA voluntarily dismissed its section 2 attempted monopolization claim because it could not show the "dangerous probability of success" necessary to prevail on that claim. USA, however, continued to press its section 1 claim.

On June 30, 1986, ARCO moved for partial summary judgment on USA's section 1 claim. ARCO offered two arguments in support of this motion. First, it argued that USA had no standing to assert the claim because USA could not suffer antitrust injury from a conspiracy to set maximum prices unless those prices were predatory. Second, ARCO argued that USA could not prove that ARCO's prices were predatory because USA could not show a dangerous probability of successful monopolization. USA responded to the motion for summary judgment by asserting that it did not need to show antitrust injury or, in the alternative, that predatory pricing under Sherman Act section 1 did not require a dangerous probability of success. The district court granted ARCO's motion for summary judgment. It held that, "[e]ven assum-

ing that [USA] can establish a vertical conspiracy to maintain low prices, [it] cannot satisfy the 'antitrust injury' requirement of Clayton Act § 4, without showing such prices to be predatory." The court reasoned that USA could not show that ARCO's prices were predatory because ARCO did not possess sufficient market power and therefore was unlikely to succeed in monopolizing the market.

We reversed the district court. We held that USA did have standing to challenge a conspiracy to set maximum prices under section 1. *See USA Petroleum,* 859 F.2d at 689. Because we found antitrust injury based on the per se illegality of a conspiracy to fix maximum resale prices, we did not reach the issue of whether ARCO had engaged in predatory pricing. The Supreme Court in turn reversed. The Court held that "[a]lthough a vertical, maximum-price-fixing agreement is unlawful under § 1 of the Sherman Act, it does not cause a competitor antitrust injury *unless it results in predatory pricing. Atlantic Richfield,* 495 U.S. at 339, 110 S.Ct. at 1891 (emphasis added). The Court then remanded the case to this court for "proceedings consistent with this opinion." *Id.* at 346, 110 S.Ct. at 1895.

## II. Contentions of the Parties Upon Remand

USA now asserts that because the Supreme Court did not reach the question of whether the prices ARCO charged were predatory, *see Atlantic Richfield,* 495 U.S. at 333 n. 3, 110 S.Ct. at 1888 n. 3, this court should reexamine the district court's definition of predatory pricing. Specifically, USA contends that the Court's recent decision in *Brook Group Ltd. v. Brown & Williamson Tobacco Corp.,* —— U.S. ——, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993), establishes that USA must show that ARCO engaged in "below-cost" pricing for which it had a "reasonable prospect . . . of recouping" any losses suffered, *id.* at ——, 113 S.Ct. at 2588 (quoted in Appellant's 1993 Supp.Brief at 1, 5). Consequently, USA requests this court to remand the case for further discovery on these two issues.

ARCO, by contrast, asserts that USA abandoned its section 1 predatory pricing claims by failing to present any evidence of predatory pricing in opposition to ARCO's motion for summary judgment or, in the alternative, failed to contest the district court's definition of predatory pricing on appeal. ARCO further argues that the Supreme Court's decision in this case expressly decided that predatory pricing in the section 2 sense is a prerequisite for antitrust injury even if the claim is premised on section 1. Finally, ARCO contends that *Brook Group* is inapplicable because it only addressed the standard for substantive liability for primary-line price discrimination under Robinson–Patman Act § 2(a) and did not disturb what ARCO views as the Supreme Court's clear mandate that section 2 predatory pricing standards should control. For these reasons, ARCO asserts that the district court should be affirmed.

Assuming *arguendo* that USA's characterization of the appropriate predatory pricing standard is correct, I nonetheless believe that USA would not be entitled to further discovery on the issue of below-cost pricing. Accordingly, the judgment of the district court must be affirmed.

## III. Jurisdiction

██ Initially, we reject ARCO's various jurisdictional challenges. First, as discussed below, it is clear that USA did not abandon the issue of what constitutes the correct predatory pricing standard in the district court. Rather, the district court rejected USA's predatory pricing theory on its merits. Second, USA appeared to raise the issue of whether its section 1 predatory pricing standard was the proper one in its first appeal to this court. *See* Appellant's 1987 Opening Brief at 31–32 & n. 16. Even if USA did not adequately raise the issue in its opening brief, ARCO thoroughly discussed the question in its own brief, *see* Appellee's 1987 Brief at 35–44, which we believe would justify excusing the waiver, *see, e.g., United States v. Ullah,* 976 F.2d 509, 514 (9th Cir.1992); *Eberle v. City of Anaheim,* 901 F.2d 814, 818 (9th Cir.1990); *International Union of Bricklayers & Allied Craftsman Local Un-*

*ion No. 20, AFL–CIO v. Martin JASKA, Inc.,* 752 F.2d 1401, 1404 n. 4 (9th Cir.1985). Finally, we reject the notion that the Supreme Court's decision in this case decided that section 2 predatory pricing standards should control. Noting that we had not reached the question of the proper definition of predatory pricing, the Court stated: "For the purposes of this case, we likewise *assume* that petitioner's prices were not predatory in nature," *Atlantic Richfield,* 495 U.S. at 333, n. 3 (emphasis added), 110 S.Ct. at 1888 n. 3; moreover, the Court noted that it "had no occasion . . . to consider the proper definition of predatory pricing," *id.* at 341 n. 10, 110 S.Ct. at 1893 n. 10. Accordingly, the issue of the appropriate predatory pricing standard was adequately preserved to be considered at this stage of the proceedings.

### IV. The Summary Judgment Standard

■ It is an established principle that an appellate court may affirm a lower court's grant of summary judgment on any basis supported by the record even if the lower court applied the incorrect legal standard. *See Henry v. Gill Indus., Inc.,* 983 F.2d 943, 950 (9th Cir.1993); *accord Diaz v. Am. Tel. & Tel.,* 752 F.2d 1356, 1362 (9th Cir.1985); *cf. Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 157, 82 L.Ed. 224 (1937) ("[T]he rule is settled that if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason."). *See generally* 10 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2716, at 658–60 & n. 16 (citing cases) (1983 & Supp.1992).

■ It is assumed that the district court applied the incorrect predatory pricing standard and that the appropriate one is, as USA contends, that articulated in *Brook Group* for section 2(a) of the Robinson–Patman Act: below cost pricing coupled with a reasonable

prospect of recoupment. However, USA concedes that it. has not yet presented any evidence of below-cost pricing. Because USA contends that it must show below-cost pricing *and* recoupment, failure of proof on below-cost pricing alone would provide a basis for affirming the district court. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).[1] Only the record that was before the district court is normally considered, *see Harkins Amusements Enters., Inc. v. General Cinema Corp.,* 850 F.2d 477, 482 (9th Cir.1988), *cert. denied sub nom. United Artists Theatre Circuit, Inc. v. Harkins Amusements Enters., Inc.,* 488 U.S. 1019, 109 S.Ct. 817, 102 L.Ed.2d 806 (1989), and the summary judgment record cannot be supplemented on appeal, *see United States v. Elias,* 921 F.2d 870, 874 (9th Cir.1990). Thus, the narrow question that must be addressed is whether USA is entitled to more discovery on below-cost pricing; if it is not, then there is no issue of material fact left to be tried, and the judgment must be affirmed.

The relevant inquiry is whether USA was given a full and fair opportunity to address the issue of below-cost pricing in response to ARCO's summary judgment motion. *See, e.g.,* 6A Jeremy C. Moore et al., Moore's Federal Practice ¶ 56.27[1], at 56–858 n. 55 (1993) ("But if a genuine issue of fact exists under the proper legal standard *and* the appellant has not had a fair opportunity to challenge the facts, summary judgment should not be affirmed." (emphasis added)); *International Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. National Right to Work Legal Defense and Educ. Found., Inc.,* 590 F.2d 1139, 1151 (D.C.Cir.1978); *Heirs of Fruge v. Blood Servs.,* 506 F.2d 841, 844 n. 2 (5th Cir.1975).[2] Although recognizing that "in deciding whether summary judgment is proper under the new legal standard, the appellate court

---

1. The record also does not contain evidence on recoupment. However, because I find that USA had a full and fair opportunity to pursue below-cost pricing in response to ARCO's summary judgment motion, I do not reach the question of whether discovery on the recoupment issue is warranted.

2. Similarly, a court of appeals may enter summary judgment *sua sponte* against a party as long as that party had a full and fair opportunity to contest the issue. *See Fountain v. Filson,* 336 U.S. 681, 682–83, 69 S.Ct. 754, 755–56, 93 L.Ed. 971 (1949); *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311–12 (9th Cir.1982); *see also Celotex,* 477 U.S. at 326, 106 S.Ct. at 2554 (recognizing the practice).

must proceed cautiously," *International Union*, 590 F.2d at 1151 (citing 10 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, Civil § 2716, at 439–42 (1973 & 1977 Supp.)), I conclude that USA was afforded a full and fair opportunity to pursue the issue of below-cost pricing in the district court. Specifically, I believe that USA, in response to ARCO's summary judgment motion, waived the right to present evidence of below-cost pricing. Moreover, there is no reason why USA should now receive a second bite at the apple. Although in analogous circumstances this court has remanded to the district court to determine whether the party against whom summary judgment might be entered was afforded a "reasonable opportunity" to present its proof, *Callahan v. Woods*, 736 F.2d 1269, 1275 (9th Cir.1984), the record is clear enough in this case that a remand is not necessary.

## V. Analysis

### A.

ARCO moved for partial summary judgment under Rule 56 and for a Rule 16 pretrial order. The purpose of both was to "formulat[e] the litigable issues presented by plaintiff [USA's] Sherman Act section 1 case by ... dismissing USA's section 1 case in its entirety as legally insufficient." Defendant's Motion for a Pretrial Order at 1; *see also* Defendant's Motion for Partial Summary Judgment at 1–2. The motion raised both empirical and legal challenges to USA's case. The empirical argument was that, unless USA could demonstrate the existence of a genuine issue of material fact concerning dangerous probability of success, summary judgment should be granted. *See, e.g.*, Defendant's Motion for a Pretrial Order at 13–15. This contention, in turn, necessarily was premised on the theoretical assertion that antitrust injury required demonstrating predatory pricing, and that Sherman Act section 2 standards for predatory pricing standards, which ARCO defined as requiring a "dangerous probability that the defendant(s) may achieve monopoly with the concomitant ability to raise prices in the future," *id.* at

17–18, should control. *See, e.g. id.* Ex. 1 at 39–42.

USA's response to ARCO's motion contained two theoretical propositions of its own. The first, rejected by the district court and ultimately by the Supreme Court, was that the harm flowing from *per se* illegal conduct, here a scheme to engage in vertical maximum resale price fixing, necessarily constitutes antitrust injury. However, USA also contended that if it needed to demonstrate that ARCO's prices were "predatory," the appropriate standard should not be that drawn from Sherman Act section 2, but rather, a very different standard based on Sherman Act section 1.

Specifically, USA asserted that the Supreme Court's decision in *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), defined " 'predatory' under § 1 as *below-market pricing, and nothing more.*" Plaintiff's Opposition to Defendant's Motion for a Pretrial Order at 8 [hereinafter USA's Opposition] (emphasis added). USA based this assertion on the *Matsushita* Court's statement that:

> There is a good deal of debate, both in the cases and in the law reviews about what 'cost' is relevant in [§ 2 predatory pricing] cases. We need not resolve this debate here, because unlike the cases cited above, this is a Sherman Act § 1 case. For the purposes of this case, it is enough to note that respondents have not suffered an antitrust injury unless petitioners conspired to drive respondents out of the relevant market by (i) *pricing below the level necessary to sell their products, or* (ii) *pricing below some appropriate measure of cost.*

*Matsushita*, 475 U.S. at 585 n. 8, 106 S.Ct. at 1355 n. 8 (emphasis added). From USA's discussion of this passage in its brief I distill two basic points. First, USA clearly believed that demonstrating either below-market level pricing or below-cost pricing *alone* would be sufficient to sustain allegations of predatory pricing in a section 1 vertical maximum price-fixing case. Second, USA *only* relied on the "below market" pricing branch

of the test.[3] These very points were reiterated at oral argument:

Mr. Blecher: We need not resolve this debate [concerning the relevant cost-based test in predatory pricing under Sherman Act § 2] because unlike the cases cited above, this is a ... Sherman Act Section 1 case. In other words, *you don't need to address the question of cost or what cost is the appropriate measure to use in a Section 1 case,* we have a different standard. And what is that standard?

For the purposes of this case, it is enough to note that respondents have not suffered an antitrust injury unless petitioners conspired to drive respondents out of the relevant market by *pricing below the level necessary to sell their products.*

Now that's *all* we need to show, that they were out to drive us out of business or to impair the vigor of our ability to compete by pricing below the level necessary to sell their products. And [footnote 8 of *Matsushita* stated] *"or," or pricing below some appropriate measure of cost. They don't say that is a prerequisite.*

RT 10/14/86 at 20 (emphasis added).

Just as in its opposition papers, USA asserted that footnote 8 of *Matsushita* was an accurate statement of the law, but denied

that it wished to rely on its below-cost prong.[4] Moreover, USA's counsel conceded that it could not meet the predatory pricing standards under section 2 "even by the most liberal standard." RT 10/14/86 at 19.[5] With only a section 1 predatory pricing theory advanced in its brief, and with that theory expressly limited to "below-market pricing," we cannot take USA's above statement as anything other than an express abandonment of an acknowledged ability to demonstrate that ARCO's prices were predatory because they were below costs.

If any doubts remained, they are resolved by the absence of references to below-cost pricing from USA's "Statement of Genuine Issues." Local Rule 7.14.2 required a party opposing summary judgment to submit a " 'Statement of Genuine Issues,' setting forth *all material facts* as to which it contend[s] *there exists a genuine issue necessary to be litigated."* **Cent.Dist.Cal.R.** 7.14.2 (1986) (emphasis added). USA contended that the *only* material facts relevant to the case were:

1. Whether ARCO has engaged in a vertical price-fixing conspiracy with ARCO-branded distributors and ARCO-branded dealers to fix prices at artificially low levels?

2. Whether ARCO's vertical price-fixing conspiracy has caused USA injury and in what amount?

---

3. As USA put it:
   The Supreme Court recently established that to recover damages from a price fixing conspiracy, a competitor need only show that the conspiracy fixed prices below the market level....
   [*In Matsushita*], [t]he Court stated that a competitor suffers antitrust injury in a § 1 case:
   [when the defendants conspire to drive ... [the plaintiffs] out of the relevant markets by (i) *pricing below the level necessary to sell their products, or* (ii) pricing below some appropriate measure of cost.
   The court denied "predatory" under § 1 as below-market pricing, and nothing more.
   USA's Opposition at 8 (alterations and emphasis in original).
   USA expressly stated that it advanced this theory because "ARCO erroneously contend[ed] that 'predatory' pricing under § 1 has the same definition as 'predatory' pricing under § 2," *id.* at 8 n. 2, a point it reemphasized at oral argument:
   The Court: If there's no likelihood of obtaining a monopoly ... that means there's not predatory prices, I suppose, by definition.
   Mr. Blecher: No. That's where you're wrong. Let's start right there..... If you say

a Section 1 conspiracy has to have the probability of achieving the monopoly, you have equated Section 1 of the Sherman Act with Section 2.
RT 10/14/86 at 11.

4. The Court later noted the essence of USA's theory:
   The Court: So you say that you have a cause of action if the defendant if ARCO conspired with its dealers to drive you out of a relevant market *by pricing below the level necessary to sell their products.*
   Mr. Blecher: Yes. *And that's what the charge—that is precisely what the charge is that remains.* They fixed the price with their dealers at a level which did not permit us to make profit and to drive us out.
   RT 10/14/86 at 22 (emphasis added).

5. Judge Reinhardt in his dissent, *see* Dissent at 142 n. 4, mischaracterizes my use of this quotation. I mean only, and precisely, what USA's Counsel stated: that USA had abandoned any theory of predatory pricing *premised on § 2.*

Plaintiff's Statement of Genuine Issues at 1–2. As discussed below, USA argues no waiver can be found because ARCO's summary judgment motion was limited to the empirical issue of dangerous probability of success. *See infra* p. 1282. This reasoning implies that Local Rule 7.14.2 only required USA to list those empirical issues that were raised by ARCO's summary judgment motion and that it wished to contest. However, on this view, because USA *conceded* that it could not demonstrate dangerous probability of success, it should have listed *nothing* in its Statement of Genuine Issues; yet, USA listed what amounts to all the elements necessary to its below-market level pricing theory of Sherman Act section 1 predatory pricing.[6] Thus, the only plausible reading of the Statement of Genuine Issues is that, whatever Local Rule 7.14.2 might *actually* have required, USA *believed* that it was required too list *all* the issues that it wished to contest at trial. Consequently, USA's failure to list below-cost pricing among them is strong evidence of waiver.

Finally, it should be noted that in its Supplemental Brief responding to ARCO's submission to the district court of the Supreme Court's decision in *Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986), USA phrased the "critical question" in the case as "whether concerted pricing activities could arguably be legal *merely because the prices are not below cost.*" Plaintiff's Memorandum Re *Cargill* at 3 (emphasis added).

■ The inescapable conclusion based on the above is that, although USA recognized below-cost pricing as an independent available theory of predatory pricing under Sherman Act section 1, it made the tactical decision not to rely on that theory but instead chose to advance only its below-market level predation theory. USA thus had a full and fair opportunity to ventilate its views with respect to below-cost pricing; however, USA chose to remove the issue from the case, and

thus waived its right to adduce evidence on the matter.

### B.

USA responds to these contentions with two arguments. First, USA asserts that ARCO *conceded* for the purposes of summary judgment that its prices were set at "predatory levels," *see* Appellant's 1993 Supp.Brief at 5; second, USA contends that ARCO's "partial" summary judgment motion was premised solely on USA's inability to demonstrate dangerous probability of success, and therefore, "did *not* challenge USA's predatory price-fixing allegations." Appellant's 1992 Brief in Response to Appellee's Pet. for Rehearing and Suggestion for En Banc at 5 (emphasis in original). Because of the limited basis of the summary judgment motion, USA maintains, no waiver based on its nonintroduction of evidence can be found. Both these arguments lack merit.

### 1.

In moving for summary judgment ARCO conceded only "that USA could prove that Atlantic Richfield set the retail prices of the competing distributors or dealers at levels lower than would have prevailed *but for* the vertical conspiracy and that these lower prices caused USA injury." Defendant's Motion for a Pretrial Order Ex. 1 at 35 (emphasis added). ARCO, therefore, posited only that it had engaged in a per se illegal maximum resale price-fixing scheme, not below-cost pricing. Moreover, USA raised the argument that ARCO had "assumed that USA could prove that ARCO fixed prices at *predatory* levels," Appellant's 1992 Motion for Clarification at 6 (emphasis added), only *following* remand of this case from the Supreme Court. USA cannot now attempt to rewrite history.

---

6. Thus, I disagree with Judge Reinhardt's discussion of the "Statement of Genuine Issues." *See* Dissent at 141 n. 3. I think that the Statement fairly implies that USA at trial intended to show that ARCO's prices were below market level. This is the only sensible reading of the allegation

that ARCO "fix[ed] prices at *artificially* low levels" (emphasis added) in light of USA's contention at the summary judgment hearing that it *only* needed to demonstrate below-market pricing, *see supra* pp. 116–118 & n. 4.

## 2.

Furthermore, USA's argument with respect to its summary judgment obligation misses the point. It is true, as USA maintains, that USA had no duty under *Celotex* to adduce *specific facts* demonstrating below-cost pricing. ARCO's summary judgment motion, at least with respect to its empirical contentions, was premised on USA's inability to demonstrate dangerous probability of success. Had USA adduced sufficient evidence of dangerous probability of success to survive summary judgment on that issue, we do not believe the district court could have granted summary judgment based on a lack of *evidence* of below-cost pricing. However, the dangerous probability of success issue was *not* the only issue raised by ARCO's "partial" summary judgment motion.[7] As discussed above, the motion did put at issue the *definition* of predatory pricing as this was the essential premise for ARCO's contention that USA's failure to demonstrate dangerous probability of success would be fatal. *Cf. United States v. Lattauzio*, 748 F.2d 559, 561 (10th Cir.1984) (refusing to consider on appeal the question of whether certain debtors were in default when the summary judgment motion, although addressing a different issue, was premised on the notion that the debtors were in default and the nonmoving party did not specifically controvert that assumption). The more limited reading of ARCO's summary judgment motion now suggested by USA—that it was limited to the empirical issue of dangerous probability of success—is

7. The use of the term "partial summary judgment" should not carry any talismanic significance. *See* 6A Moore's Federal Practice, *supra,* ¶ 56.20[3.–0] to [3.–3], at 56–684 to 56–699 (noting the variety of different situations to which the term is applied).

8. This is not to intimate that uttering the magic words "summary judgment" requires the non-moving party to present evidence and make argument on every conceivable issue relevant to its case. As Judge Easterbrook put it, when a defendant's summary judgment motion is limited, there is no rule that "requires a party to include all issues in every motion for summary judgment on pain of surrendering the point." *DeMallory v. Cullen,* 855 F.2d 442, 451 n. 2 (7th Cir.1988) (Easterbrook, J., dissenting); *see also Easterwood v. CSX Transp., Inc.,* 933 F.2d 1548, 1556 (11th Cir.1991) ("The district court may grant summary judgment on an issue only if a party moves

belied by USA's own conduct. USA challenged *both* that predatory pricing was necessary *and* ARCO's assertion that the section 2 definition was appropriate. Moreover, as discussed above, USA listed two issues in its Statement of Genuine Issues that ARCO had *conceded* for the purposes of the summary judgment motion, and these two issues were the very facts it believed necessary to sustain its section 1 predatory pricing theory.[8]

■ With the issue of the appropriate definition of predatory pricing in dispute, USA was required, should it wish to challenge on appeal ARCO's contention that the section 2 predatory pricing standard applied, to present its contentions concerning the appropriate standard. *See Singleton v. Wulff,* 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). In short, asserting that the section 2 predatory pricing standard applied fulfilled USA's "*initial* responsibility of informing the district court of the *basis* for its motion," *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553 (emphasis added), and thus placed on USA the duty of "argu[ing] that the law was on [USA's] side regarding the legal theories on which the appellees focused *or any other legal theory.*" *Edmond v. U.S. Postal Serv. General Counsel,* 949 F.2d 415, 430 (D.C.Cir.1991) (Silberman, J., concurring in part and dissenting in part) (emphasis in original).[9] Without deciding that USA was required to assert every conceivable theory of what the appropriate standard might be

· for summary judgment on that issue."), *aff'd on other grounds* —— U.S. ——, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993); *cf.* Fed.R.Civ.P. 56(b) (permitting the defendant to move for summary judgment on their entire claim "or any part thereof"). I only contend that, in this case, ARCO's summary judgment motion fairly put the definition of predatory pricing at issue.

9. The majority in *Edmond* did not disagree with Judge Silberman on this point. The court merely concluded that the specific theory they considered on appeal had been implicitly raised by the assertion of a broader theory. *See Edmond v. U.S. Postal Serv. General Counsel,* 949 F.2d 415, 421–22 (D.C.Cir.1991). Such ambiguity, however, is not present in this case. As discussed above, USA sharply distinguished below-cost from below-market theories of section 1 predatory pricing and made clear that it intended to rely exclusively upon the later.

on pain of waiver,[10] there is no reason not to hold USA to the contentions that it *did* make.[11] It is a general rule that a party cannot revisit theories that it raises but abandons at summary judgment. *See, e.g., Alaska Airlines, Inc. v. United Airlines, Inc.,* 948 F.2d 536, 546 n. 15 (9th Cir.1991) ("It is well established that an appellate court will not reverse a district court on the basis of a theory that was not raised below."), *cert. denied sub nom. People's Express, Inc. v. United Airlines, Inc.,* —— U.S. ——, 113 S.Ct. 814, 121 L.Ed.2d 686 (1992); *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir.1983) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, *legal or factual,* why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal." (quoted in *Morrison v. Car,* 797 F.2d 752, 757 (9th Cir.1986) (Kozinski, J., dissenting) (emphasis added)); *Vaughner v. Pulito,* 804 F.2d 873, 877 n. 2 (5th Cir.1986) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal."); *Edward B. Marks Music Corp. v. Continental Record Co.,* 222 F.2d 488, 492 (2d Cir.) ("[A] plaintiff in his opposition to a motion for summary judgment cannot abandon an issue and then, after an unpalatable decision by the trial judge ... resurrect the abandoned issue."), *cert. denied,* 350 U.S. 861, 76 S.Ct. 101, 100 L.Ed. 764 (1955); *see also* 10 Wright & Miller, *supra,* § 2716, at 651–54 ("[On appeal t]he parties cannot ... *advance new legal theories or raise new issues in order to secure a reversal of the lower court's [summary judgment] determination.* " (emphasis added) (footnotes omitted)); *Edmond,* 949 F.2d at 430–33 (Silberman, J., concurring in part and dissenting in part); *cf. Lyons v. Jefferson Bank & Trust,* 994 F.2d 716, 721–22 (10th Cir.1993) (collecting waiver cases and noting that waivers have been found when "issues were raised and then abandoned pre-trial"); *United States v. Patrin,* 575 F.2d 708, 712 (9th Cir.1978) ("It is immaterial whether the issue was not tried in the district court because it was not raised or because it was raised but conceded by the party seeking to revive it on appeal.").

Here, USA contended that below-cost pricing was an available predatory pricing theory but expressly chose not to rely upon it. Having chosen to pursue only its below-market pricing theory, USA cannot now claim that, with respect to below-cost pricing, it lacked a fair and full opportunity to "ventilate the issue[ ]." [12] *Waterbury v. T.G. & Y. Stores Co.,* 820 F.2d 1479, 1480 (9th Cir.1987) (internal quotations omitted).[13]

---

10. *See infra* note 14.

11. In his dissent, Judge Reinhardt implies that my statement that "USA ... had no duty under *Celotex* to adduce *specific facts* demonstrating below-cost pricing" somehow contradicts my earlier conclusion that "failure of proof on below-cost pricing alone would provide a basis for affirming the district court." Dissent at 141 n. 2 (quoting *supra* pp. 121, 113 (emphasis in original)). However, I do *not* "affirm the district court's grant of summary judgment *precisely because* USA failed to present such *evidence* [of below-cost pricing]." Dissent at 141 n. 2 (emphasis added). Rather, I merely conclude that, even if USA was not required to present *evidence* of below-cost pricing in response to ARCO's summary judgment motion, it waived the right to make such a showing.

12. Quite beside the point, then, is Judge Reinhardt's contention that "[i]f the district court ultimately concluded that a dangerous probability [of success] was *un*necessary, both parties understood that USA would have to conduct further discovery on the pricing issue. This would have been true whether the district court ultimately settled on a below-market of a below-cost standard." Dissent at 143 (emphasis in original). In response to ARCO's summary judgment motion, USA was required to advanced its theory of predatory pricing if it wished to challenge ARCO's definition of predatory pricing on appeal. In the process, USA waived any below-cost theory. Thus, any discovery that USA otherwise *might* have been entitled to had the district court *denied* summary judgment is irrelevant.

13. It must be stressed that the question posed here is fundamentally different from the issue posed in *Elder v. Holloway,* 975 F.2d 1388 (9th Cir.1991), *cert. granted,* —— U.S. ——, 113 S.Ct. 3033, 125 L.Ed.2d 721 (1993) (No. 92–8579), which held that the plaintiff's summary judgment burden at summary judgment in a qualified immunity case "includes identifying the universe of relevant statutory or decisional law from which the court can determine whether the right violated was clearly established," *id.* at 1393. This case does *not* involve a party "waiving" its right to cite relevant legal authority to an appellate

### C.

The remaining question is whether the asserted change in law wrought by *Brook Group* should excuse USA's abandonment of its right to demonstrate below-cost pricing. It should not.

■ To ask whether USA should be granted discovery on below-cost pricing is essentially to ask if USA's "waiver" of its right to demonstrate below-cost pricing should be excused because of changed circumstances. The general rule in such cases is that a waiver will be excused if "a *new* issue *arises* while appeal is pending because of a change in the law." *State of Cal. Dep't of Educ. v. Bennett*, 843 F.2d 333, 339 (9th Cir.1988) (emphasis added).

■ Even if, as USA contends, the "availability" of the particular *combination* of elements announced by *Brook Group* was insufficiently clear at the time of the summary judgment motion to render the entire theory "available," this should not excuse USA's earlier abandonment of the lesser showing involving below-cost pricing. As discussed above, USA contended at summary judgment that either below-market pricing *or* below-cost pricing *alone* could constitute "predatory" conduct in the context of a vertical conspiracy to engage in maximum resale price maintenance. Demonstrating below-cost pricing alone is *a fortiori* less onerous than meeting the *Brook Group* requirements of showing below-cost pricing *with* a reasonable prospect of recoupment. Thus, with respect to below-cost pricing, *Brook Group* did not make available a "new" theory, but only *added* a requirement to a previously available theory that USA had expressly chosen to forgo. Of course, adopting the *Brook Group* standard would have an equally important second effect: to make clear that above cost below-market level pricing even when coupled with a structural showing such as recoupment, cannot constitute predatory pricing.[14] Viewed in this manner, *Brook Group* did not so much as make a new theory available as *negate* the sole theory upon which USA had previously relied.

court, or for that matter, waiving the right to challenge the law applied by the court below. To the contrary, the analysis proceeds on the *assumption* that the law is *precisely* what the complaining party contends. The question, rather, is whether more discovery is warranted. As Judge Kozinski wrote in dissent of this court's decision not to hear *Elder* en banc:

> Every issue in every case turns on both fact and law; facts outside a legal framework are as irrelevant as abstract legal principles. When we say, for example, that the plaintiff must prove certain facts at trial, we mean he must first establish what the law is and then conform his proof to the applicable legal standard. If the plaintiff misunderstands the law, he may well prove up the wrong set of facts. The failure to get the law right in such a case may then be fatal, not because law is fact, but because a party can't supplement the record on appeal once it discovers that it missed the legal target in the district court.

*Elder v. Holloway*, 984 F.2d 991, 993 (9th Cir. 1993) (Kozinski, J., dissenting from the order rejecting the suggestion for rehearing en banc). Of course, it still must be enquired if a "full and fair opportunity" was provided to adduce the relevant facts, and this inquiry, in cases of omission, may well require courts to determine the precise extent to which a party waives available legal arguments by failing to advance them at summary judgment. But that is not this case. When a party asserts at summary judgment that a specific legal theory is available but fails to pursue it adequately, there is no difficulty concluding that such an opportunity has been granted.

14. USA appears to rely on the *Brook Group* Court's statement that:

> [A] plaintiff seeking to establish competitive injury resulting from a rival's lower prices must prove that the prices complained of are below an appropriate measure of its rival's costs.... Although *Cargill* and *Matsushita* reserved as a formal matter the question whether recovery should *ever* be available ... when the pricing in question is above some measure of incremental costs ... the reasoning in both opinions *suggests that only below-cost prices should suffice, and we have rejected elsewhere the notion that above-cost prices that are below general market levels or the costs of a firm's competitors inflict injury to competition cognizable under the antitrust laws. See Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340, 110 S.Ct. 1884, 1891, 109 L.Ed.2d 333 (1990).

*Brook Group*, —— U.S. at ——, 113 S.Ct. at 2588 (second emphasis added) (citations and footnotes omitted). Thus, USA's reading of *Brook Group* appears to be that, even if the Supreme Court's opinion in *Atlantic Richfield* formally declined to revisit the definition of predatory pricing stated in footnote 8 of *Matsushita*, the *Brook Group* Court took the *Atlantic Richfield* Court's reasoning to exclude mere below-market level pricing from the ambit of predatory pricing.

Conceptually, this situation does not differ significantly from the case in which a party alleges two different (and clearly established) legal theories, chooses to pursue only one at summary judgment, and then, when the first theory fails on the merits, seeks to revisit the discarded theory. In both cases, the reason why the first theory failed is *irrelevant* to whether the complaining party had a full and fair opportunity to support the abandoned theory. With respect to the discarded theory, then, the two situations can be described as functionally equivalent. Accordingly, to grant USA discovery for the purpose of revisiting a theory that it recognized was available but expressly chose not to pursue would appear to countenance precisely the second bite at the apple that ordinarily is not permitted. *See, e.g., Image Technical Serv., Inc. v. Eastman Kodak Co.,* 903 F.2d 612, 615 n. 1 (9th Cir.1990) (finding failure to raise a "rule of reason" theory of illegality in response to summary judgment to have waived it), *aff'd,* — U.S. ——, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Lone Star Steel Co. v. United Mine Workers of Am.,* 851 F.2d 1239, 1243 (10th Cir.1989) ("Ordinarily, a party may not lose on one theory of the case, and then prevail on appeal on a different theory."); *see also Cooper v. Lane,* 969 F.2d 368, 371 (7th Cir.1992) ("We have long refused to consider arguments that were not presented to the district court in response to summary judgment motions."); *Savers Fed. Savs. & Loan Ass'n v. Reetz,* 888 F.2d 1497, 1501 (5th Cir.1989) (citing cases); *sources cited supra* pp. 122–124.

## VI. Conclusion

At summary judgment, USA was compelled to respond to ARCO's contention that predatory pricing in the context of a vertical maximum resale pricing scheme should be judged by the Sherman Act section 2 standard. USA did respond, asserting that both below-cost and below-market pricing theories were applicable, but announcing that it would rely solely upon the latter. Now, in the wake of a new decision suggesting that its initial choice was erroneous, USA seeks to revisit the theory that it previously discarded. Because USA had a full and fair opportunity to preserve that theory, however, this request will not be granted. Therefore, the decision of the district court is **AFFIRMED.**

ALARCÓN, Circuit Judge, specially concurring:

I concur in the judgment of the court. Rather than discuss an issue not properly before this court, I would carry out the mandate of the United States Supreme Court and enter a brief order affirming the district court's order. I would not discuss the predatory pricing issue that has now been resurrected by USA Petroleum Company, under the guise of a "motion for clarification," because the Supreme Court has clearly instructed that USA failed to demonstrate antitrust standing on the only issue preserved for appeal.

### I.

The district court granted summary judgment in favor of the Atlantic Richfield Company (ARCO). It held that the USA Petroleum Company (USA) was not entitled to damages for a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, because it had failed to demonstrate "antitrust injury."

On October 7, 1988, this court reversed "the decision of the district court and remand[ed] the case for further proceedings consistent with this opinion." *USA Petroleum Co. v. Atlantic Richfield Co.,* 859 F.2d 687, 697 (9th Cir.1988). The majority's mandate directed the district court to proceed to trial because USA had demonstrated antitrust injury, entitling it to recover damages if it could meet the requisite standard of persuasion at trial. *Id.*

On May 14, 1990, the Supreme Court reversed this court's decision. *Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990). The Court's holding is stated in words that appear to be free from ambiguity:

Respondent argues that, as a competitor, it can show antitrust injury from a vertical conspiracy to fix maximum prices that is unlawful under § 1 of the Sherman Act, even if the prices were set above predatory levels. In addition, respondent maintains

that any loss flowing from a *per se* violation of § 1 automatically satisfies the antitrust injury requirement. We reject both contentions and hold that respondent has failed to meet the antitrust injury test in this case. We therefore reverse the judgment of the Court of Appeals.

*Id.* at 335, 110 S.Ct. at 1889.

Notwithstanding the clear direction of the Supreme Court to this court to enter an order upholding the district court's dismissal of this action because USA failed to demonstrate antitrust injury, USA filed a document on November 13, 1991, styled as a "Motion for Clarification On Remand From Supreme Court," in which it requested that this court "*reverse* the district court's grant of summary judgment." (emphasis added).

In its Motion for Clarification, USA asked *this court* to "clarify" the Supreme Court's mandate that we affirm the district court's grant of summary judgment in this action because USA failed to demonstrate antitrust injury. USA seeks a review by this court of an issue it expressly abandoned in the district court, after acknowledging it had not presented any evidence to demonstrate that ARCO's prices were predatory.

## II.

USA alleged in its amended complaint that "ARCO and its co-conspirators have implemented severe and predatory price cuts" in violation of Section 1 of the Sherman Act. After almost three years of exhaustive discovery, ARCO filed a motion for a partial summary judgment on March 31, 1986. ARCO requested dismissal of USA's Section 1 and Section 2 claims on the ground that USA could not satisfy the "antitrust injury" requirement of Section 4 of the Clayton Act because USA had failed to show that its prices were predatory. On April 28, 1986, USA entered into a stipulation for an order dismissing its Section 2 claim. On July 25, 1986, after the dismissal of its Section 2 claim, USA filed a document entitled "Statement of Genuine Issues." USA stated the only issues in dispute were

"1. Whether ARCO has engaged in a vertical price fixing conspiracy with ARCO-branded distributors and ARCO-branded dealers to fix prices at artificially low levels?

2. Whether ARCO's vertical price fixing conspiracy has caused USA injury and in what amount?"

USA did not contend that predatory pricing was a genuine issue of fact in dispute. USA relied instead on its theory that antitrust injury can be shown solely by proof of an unlawful conspiracy to fix below market retail gasoline prices. Thus, any factual issue concerning predatory pricing was abandoned by USA *prior* to the hearing on ARCO's motion for a partial summary judgment on the Section 1 claim.

A hearing on ARCO's motion for a summary judgment on the Section 1 claim was conducted on October 14, 1986. During his argument in opposition to the motion, USA's counsel conceded that it could not prove predatory pricing on the remaining Section 1 claim "even by the most liberal standard." USA accurately described the essence of the October 14, 1986 proceedings in its opening brief before this court dated July 6, 1987.

The district court granted ARCO's motion on February 25, 1987. (CR 100, 103). The court held that ARCO's vertical conspiracy to fix below-market prices was pro-competitive and therefore could not produce the kind of injury that the antitrust laws were intended to prevent. The court ruled USA was required to prove that the conspiracy between ARCO and its dealers fixed "predatory" prices and that ARCO had a dangerous probability of successfully monopolizing the market in order to satisfy the antitrust injury requirements of *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). *Plaintiff,* already having abandoned its Section 2 Sherman Act claims, *offered no proof on predatory pricing* or dangerous probability of monopolization. The Court entered judgment for ARCO under Fed.R.Civ.P. 54(b). (CR 100, 103). USA appeals from that judgment.

(emphasis added).

Based on the uncontroverted facts, the district court concluded that USA had failed to make a showing that ARCO's prices were

predatory. In its order dismissing the Section 1 claim, the district court summarized its legal conclusion as follows:

Even assuming that the plaintiff can establish a vertical conspiracy to maintain low prices, the plaintiff cannot satisfy the "antitrust injury" requirement of Clayton Act § 4, without showing such prices to be predatory.

The record unmistakably demonstrates that USA expressly abandoned its predatory pricing claim before the district court. USA offered no evidence of predatory pricing. USA conceded in its opening brief before this court that it had not demonstrated predatory pricing in its submission of evidence in opposition to ARCO's partial motion for a summary judgment. USA represented to the district court that the only genuine issues of material fact in dispute to be decided on summary judgment were whether ARCO had engaged in a conspiracy to fix prices below market level; and, if so, whether USA was injured by this conduct.

### III.

On the first page of its opening brief before this court, under the heading "Statement Of The Issue" USA represented as follows:

"The *sole issue* is whether USA Petroleum Company's lost sales and reduced profits from the defendant's *per se* unlawful resale price maintenance conspiracy to fix artificial, below-market retail gasoline prices constitutes antitrust injury." (emphasis added). On page 5 of its opening brief, USA summarized the issue raised by ARCO's partial motion for a summary judgment regarding the Section 1 claim as follows:

Even given the existence of the unlawful conspiracy and its conceded effect on retail gasoline prices, ARCO contended that USA, a competitor, could not suffer antitrust injury from this vertical price-fixing scheme.

The majority correctly identified the issue presented by USA as follows:

The question on appeal is whether in the absence of proof of predatory pricing a competitor can recover damages because

of a maximum resale price maintenance agreement. Specifically, we must decide whether a competitor's injuries resulting from vertical *non-predatory*, maximum price fixing fall within the category of "antitrust injury."

859 F.2d at 689. (emphasis added).

The majority's characterization of the prices fixed by ARCO as "nonpredatory" is supported by the record and USA's candid admission that it "offered no proof of predatory pricing." Appellant's Opening Brief at 6. In reversing the dismissal of the Section 1 claim, the majority concluded that "the purposes and policies of the antitrust laws are best effectuated by recognizing the 'standing' of competitors to enforce the antitrust laws against price-fixing conspiracies." 859 F.2d at 697.

In its petition for a rehearing, ARCO characterized the question presented by USA's appeal as follows: "The majority and dissenting opinions agree that [this] appeal presents the single issue, 'whether a competitor's injuries resulting from vertical *non-predatory*, maximum price fixing fall within the category of "antitrust injury." ' " USA, in its opposition to the petition for a rehearing, did not argue that ARCO's conclusion that USA had presented only one issue to this court was erroneous.

In footnote 5 of its response to the petition for a rehearing, USA states that, "ARCO's suggestion that the *only* anticompetitive effect of maximum vertical price-fixing in the setting of a predatory price is wrong. The Supreme Court has consistently condemned *all* price fixing because it artificially distorts the competitive process." This argument demonstrates USA's unyielding adherence to its mistaken notion that it was not required to show predatory price fixing to demonstrate antitrust injury.

### IV.

The Supreme Court granted certiorari to resolve the sole issue raised in USA's appeal to this court. Justice Brennan framed the issue before the Court as follows: "This case presents the question whether a firm incurs an 'injury' within the meaning of the anti-

trust laws when it loses sales to a competitor charging *non-predatory* prices pursuant to a vertical, maximum-price-fixing scheme." 495 U.S. at 331, 110 S.Ct. at 1887 (emphasis added).

The Court summarized the district court's reasoning as follows:

> The District Court granted summary judgment for ARCO on the § 1 claim. The court stated that "[e]ven assuming that [respondent USA] can establish a vertical conspiracy to maintain low prices, [respondent] cannot satisfy the 'antitrust injury' requirement of Clayton Act § 4, without showing such prices to be predatory." App. to Pet. for Cert. 3b. The court then concluded that respondent could make no such showing of predatory pricing because, given petitioner's market share and the ease of entry into the market, petitioner was in no position to exercise market power.

*Id.* 495 U.S. at 333, 110 S.Ct. at 1888.

The Supreme Court reversed this court's judgment. *Id.* at 335, 110 S.Ct. at 1889. The court rejected USA's argument that:

> [I]t is inappropriate to require a showing of predatory pricing before antitrust injury can be established when the asserted antitrust violation is an agreement in restraint of trade illegal under § 1 of the Sherman Act, rather than an attempt to monopolize prohibited by § 2.

*Id.* at 338, 110 S.Ct. at 1891.

The Court held that "[a]lthough a vertical maximum-price-fixing agreement is unlawful under § 1 of the Sherman Act, it does not cause a competitor antitrust injury unless it results in predatory pricing." *Id.* at 339, 110 S.Ct. at 1891. The Court's concluding paragraph reads as follows: "Respondent has failed to demonstrate that it has suffered any antitrust injury. The allegations of a *per se* violation does not obviate the need to satisfy this test." *Id.* at 346, 110 S.Ct. at 1895. The principle announced by the Court in this case is free from doubt. Where, as here, a competitor fails to present any evidence of predatory pricing, the district court must dismiss a Section 1 claim even though the evidence shows an illegal maximum-price-fixing conspiracy.

Having determined that the majority had erred in ruling that USA had demonstrated antitrust injury, the Court reversed the judgment of this court and remanded "for proceedings consistent with this opinion." *Id.* In light of USA's concession in its opening brief before this court that it had not presented any evidence of predatory pricing, I believe that this court was compelled by the Supreme Court's mandate to enter an order stating simply: "In conformance with the mandate of the Supreme Court in this matter, 495 U.S. 328, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990), the judgment of the district court is affirmed."

## V.

The Supreme Court announced its decision in this matter on May 14, 1990. On November 13, 1991, prior to any proceedings in this matter consistent with the Court's mandate, USA filed its "Motion for Clarification on Remand from the Supreme Court." Since no action had yet been taken to carry out the Supreme Court's mandate by this court, there simply was no order or judgment from this court that required clarification. No rule was cited by USA authorizing a "clarification" by this court of the import of the *Supreme Court's* mandate. This court is in no position to "clarify" a decision of the Supreme Court. USA's request for a clarification of the remand order should have been directed to the Supreme Court.

## VI.

The Supreme Court has instructed that once a motion for a summary judgment has been filed, the plaintiff must present evidence to support the factual allegations in the complaint. *Lujan v. Defenders of Wildlife,* —— U.S. ——, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992). The Court set forth this principle in the following passage:

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that

are necessary to support the claim," [*Lujan v.*] *National Wildlife Federation, supra,* 497 U.S. [871], at 889, 110 S.Ct. [3177], at 3189 [111 L.Ed.2d 695 (1990)]. In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," Fed.Rule Civ.Proc. 56(e) which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial," *Gladstone* [*Realtors v. Village of Bellwood* ], *supra,* 441 U.S. [91], at 115, n. 31, 99 S.Ct. [1601], at 1616, n. 31 [60 L.Ed.2d 66 (1979)]. *Id.* USA has acknowledged that it failed to present in the district court, any evidence of predatory pricing. It is boilerplate law that we must review a district court's order granting or denying summary judgment independently, without deference to the district court's legal rulings. Even if it were possible to ignore USA's statement in its opening brief that the sole issue before this court is whether ARCO's unlawful conspiracy to fix prices is sufficient to show antitrust injury without proof of predation, we would still be required to determine for ourselves whether the evidence presented by USA raised a genuine issue of material fact on the question of predatory pricing. In performing this task, we would be required to ignore the trial court's legal pronouncements and search the record for evidence of predatory pricing. Performance of that task would be simple in this case because of USA's admission in its opening brief before this court that it offered no proof of predatory pricing in response to the partial motion for a summary judgment to dismiss the Section 1 claim.

## VII.

Under the law of this circuit, a party cannot assert one theory before this court and, upon losing, return again and assert an entirely different theory. In *Nguyen v. United States,* 792 F.2d 1500 (9th Cir.1986), we relied on the following principle in reversing an order granted upon a new theory that was inconsistent with our prior mandate:

> Much of the value of summary judgment procedure in the cases for which it is appropriate ... would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back long thereafter and fight on the basis of some other theory.

*Id.* at 1503 (quoting *Freeman v. Continental Gin Co.,* 381 F.2d 459, 469–70 (5th Cir.1967)).

In this matter, USA fought the good fight before this court for a ruling that proof of a conspiracy to fix maximum prices was sufficient to demonstrate antitrust injury without proof that the prices were predatory. The Supreme Court rejected that argument. Having lost that battle, USA now seeks to return to the district court to challenge ARCO's motion for partial summary judgment on a factual theory it expressly abandoned.

I would not permit a litigant under the guise of a motion for clarification, to pursue a theory asserted in its complaint that it deliberately abandoned, in order to test the sufficiency of its evidence on a discrete theory. Our courts are too burdened with meritorious claims to permit skillful counsel to abuse their right of appeal by offering up successive claims until they finally find one that will persuade at least two judges of this court. This tactic is contrary to the mandate of the Supreme Court in this case, and violates this circuit's prohibition against piecemeal review of motions for a summary judgment based on theories that could have been presented in a prior request for review. I would not discuss USA's abandoned predatory pricing claim. Instead, I would enter an order affirming the district court pursuant to the Supreme Court's ruling that USA has failed to demonstrate antitrust injury.

REINHARDT, Circuit Judge, concurring and dissenting:

I concur only in Part III of Judge Nelson's opinion, which concludes that we have jurisdiction to determine whether the district court applied the correct predatory pricing standard.[1] However, because I do not believe that USA abandoned its right to pres-

---

1. Accordingly, I dissent from Judge Alarcón's opinion, which reaches a contrary conclusion.

ent evidence of below-cost pricing, I dissent from the rest of her opinion.

## I.

At the outset, it is important to understand exactly what issue we have been asked to decide here, and how we got to this point. In 1986, ARCO moved for summary judgment on USA's claim of a Sherman Act section one violation. ARCO claimed that a competitor had no standing to challenge a conspiracy to set maximum prices unless those prices were predatory, and that USA had failed to show that ARCO's prices were predatory because it had failed to show a dangerous probability of successful monopolization. Under its motion ARCO could prevail only if a dangerous probability of successful monopolization is an element of a section one violation. USA conceded that it could not show a dangerous probability of successful monopolization. It opposed the summary judgment motion on two purely legal grounds. First, USA argued that a competitor has standing to challenge a per se illegal price-fixing scheme, regardless of whether the scheme involves predatory pricing. Second, USA argued that even if a competitor must show predatory pricing, a dangerous probability of successful monopolization is not an element of such a showing under section one of the Sherman Act. The district court rejected these arguments and granted summary judgment.

We reversed on the first ground. *See USA Petroleum Co. v. Atlantic Richfield Co.,* 859 F.2d 687 (9th Cir.1988). We concluded that competitors had standing "to enforce the antitrust laws against price-fixing conspiracies," regardless of whether the conspiracies involved predatory pricing. *Id.* at 697. Accordingly, we did not reach the second question—whether predatory pricing under section one requires a showing of a danger of monopolization. The Supreme Court reversed our decision. *See Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 110

S.Ct. 1884, 109 L.Ed.2d 333 (1990). As we had, the Court considered only the first ground. It held that a competitor could not show antitrust injury from a vertical, maximum price-fixing conspiracy unless the conspiracy resulted in predatory pricing. *See id.* 495 U.S. at 338, 110 S.Ct. at 1891–92. However, the Court, understandably, did not resolve the second issue—whether a dangerous probability of successful monopolization is an element of predatory pricing under section one. *See id.* 495 U.S. at 332 n. 3, 340–41 n. 10, 110 S.Ct. at 1888 n. 3, 1892–93 n. 10.

Thus, the issue that we did not reach the first time the case was before us, and that the Supreme Court did not reach either, is before us again. Now is the appropriate time for us to decide it. It is purely legal in nature: whether a plaintiff alleging predatory pricing in violation of section one of the Sherman Act must show that a dangerous probability of successful monopolization exists.

Judge Nelson concludes, however, that the question was somehow mooted when the case was in the district court over seven years ago. She contends that, while contesting ARCO's summary judgment motion on the dangerous probability issue, USA waived its right to present evidence regarding an entirely different element of predatory pricing—whether ARCO's prices were set below cost. Judge Nelson would affirm the district court's grant of summary judgment on the basis of that purported waiver. Yet whether ARCO's prices were set below cost was simply not at issue at the time of ARCO's summary judgment motion. That issue, like a number of others, was reserved for later determination, in the event that ARCO failed in its summary judgment motion. Judge Nelson does not suggest that USA had any obligation to present evidence with respect to ARCO's pricing policies in response to that motion. Indeed, she explicitly states that USA had *no* such obligation.[2] Rather, she relies entirely on a few passing comments in USA's brief opposing summary judgment and in its oral argument on the motion as her

---

2. She states that: "It is true, as USA maintains, that USA had no duty under *Celotex* to adduce *specific facts* demonstrating below-cost pricing." Opinion of Judge Nelson at 121. Yet Judge Nelson would affirm the district court's grant of

summary judgment precisely because USA failed to present such evidence. *See* Opinion of Judge Nelson at 113 ("Because USA contends that it must show below-cost pricing *and* recoupment, failure of proof on below-cost pricing alone

basis for finding that it waived a legal theory that is essential to its case. In all fairness, USA's unrelated comments simply cannot be taken out of context and transformed into a waiver of its right to rely on ARCO's conduct in setting prices below cost.[3]

Judge Nelson argues, erroneously, that USA "assert[ed] that both below-cost and below-market pricing theories were applicable, but announc[ed] that it would rely solely on the latter." Opinion of Judge Nelson at 128.[4] USA did nothing of the kind. Instead, in the portion of its opposition to summary judgment quoted by Judge Nelson, USA merely explained that the Supreme Court in *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n. 8, 106 S.Ct. 1348, 1355 n. 8, 89 L.Ed.2d 538 (1986), had not set forth "dangerous probability of success" as an element of predatory pricing under section one. Any discussion of whether below-cost, below-market, or both theories were available was quite tangential to the issue raised by ARCO's motion—whether USA needed to prove a dangerous probability of success.

ARCO's motion *specifically abstained from calling into question* USA's ability to prove particular price-cost relationships, and ARCO's reply to USA's opposition did not even discuss whether USA had to show below-market or below-cost pricing. USA had not yet been granted complete discovery on ARCO's pricing policies, and ARCO desired to end the litigation without further discovery. To that end, ARCO tailored its summary judgment motion so that only a narrow class of evidentiary issues would have been relevant to its disposition—those evidentiary issues relating to the existence or non-existence of a dangerous probability of monopoly. If the district court ultimately concluded that a dangerous probability was *un*necessary, both parties understood that USA would have to conduct further discovery on the pricing issue. This would have been true whether the district court ultimately settled on a below-market or a below-cost standard. Under these circumstances, one cannot say that USA "had a full and fair opportunity to ventilate the issues" relating to whether ARCO set its prices below cost. *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir. 1982).

## II.

Because I do not resolve this case on the procedural grounds relied upon by Judges Nelson and Alarcón, I must reach the question they do not decide—whether a danger-

would provide a basis for affirming the district court."). She claims to "merely conclude that, even if USA was not required to present *evidence* of below-cost pricing in response to ARCO's summary judgment motion, it waived the right to make such a showing." Opinion of Judge Nelson at 123 n. 11. Yet this claim is inconsistent with the sentence quoted from page 113 of her opinion. In addition, as I demonstrate in the text and at note 3, USA did *not* waive the right to make a showing of below-cost pricing.

3. Judge Nelson's treatment of USA's "Statement of Genuine Issues" seeks to work a similar transformation of ambiguous, unrelated comments into a waiver of the right to present evidence of below-cost pricing. In its "Statement," quoted at page 118–119 of Judge Nelson's opinion, USA listed two "genuine issues," one corresponding to each of its theories of antitrust standing: (1) whether ARCO's scheme led to prices at "artificially low levels"; and (2) whether ARCO's *per se* illegal vertical price-fixing scheme caused USA injury. Judge Nelson seeks to transform USA's allegation that ARCO set prices at "artificially low levels" into an admission that USA would only rely on below-market pricing. She states that "this is the only sensible reading of the allegation ... in light of USA's contention at the

summary judgment hearing that it *only* needed to demonstrate below-market pricing." Opinion of Judge Nelson at 119 n. 6. Yet if USA's passing comments at the hearing cannot suffice to create a waiver, its use of the intentionally ambiguous term "artificially low levels"—which obviously includes *both* below-market *and* below-cost prices—cannot be taken as a waiver, either.

4. Judge Nelson also states that "USA's counsel conceded that it could not meet the predatory pricing standards under section 2 'even by the most liberal standard.'" Opinion of Judge Nelson at 118. USA's concession was not an admission that it could not prove below-cost pricing. It was merely an acknowledgment that USA could not show a *dangerous probability of successful monopolization*, and thus that it could not show predatory pricing *under section two*. USA's counsel stated:

I believe there is no dangerous probability of monopolization and therefore the idea that this price is predatory, even by—even by the most liberal standard, is probably going to fail. And it's for that reason, for those analyses, that looking even at all these cases, looking at the need to define the market for monopoly purposes, that we agreed to drop Section 2.

ous probability of successful monopolization is a necessary element of a predatory pricing violation under section one of the Sherman Act. I would hold that the district court erred in concluding that a dangerous probability of success requirement exists under section one.

The district court's analysis confuses those standards which apply under section 2 of the act with those which apply under section one. When a plaintiff seeks to prove that a competitor has engaged in predatory pricing in violation of section two, that plaintiff must show that the defendant's conduct carries with it a dangerous probability of successful monopolization. *See William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 668 F.2d 1014, 1027 (9th Cir.1981), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). The plaintiff will face this hurdle because section two, which reaches *unilateral* conduct, only forbids monopolization and attempted monopolization. *See Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 767, 104 S.Ct. 2731, 2739, 81 L.Ed.2d 628 (1984).

Section one, by contrast, reaches a broader range of competitive evils, so long as they result from a *conspiracy. See id.* at 768–69, 104 S.Ct. at 2740–41. Even where a predatory pricing scheme does not create a dangerous risk of monopolization, it can still have substantial anticompetitive effects by eliminating significant market participation. One need not drive out all or even most competitors in order to realize a gain from below-cost pricing. Such a scheme might drive out enough competitors to create a concentrated market structure, or, in an already-concentrated market, simply "cause [competitors] to raise their prices to supracompetitive levels within a disciplined oligopoly." *Brook Group v. Brown & Williamson Tobacco Corp.,* ——  U.S. ——, ——, 113 S.Ct. 2578, 2589, 125

L.Ed.2d 168 (1993). Where such effects occur as the result of a contract, combination, or conspiracy, a section one violation exists "even in the absence of incipient monopoly." *Copperweld,* 467 U.S. at 769, 104 S.Ct. at 2741; *see Western Concrete Structures Co. v. Mitsui & Co.,* 760 F.2d 1013, 1017–18 (9th Cir.), *cert. denied* 474 U.S. 903, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985).[5]

Given the aims and scope of section one of the Sherman Act, I would hold that a plaintiff can make out a predatory pricing claim under that section without showing that there is a dangerous probability of successful monopolization. Accordingly, I would reverse the district court's grant of summary judgment and remand for further proceedings.

---

5. In its recent decision in *Brook Group* the Supreme Court recognized that more stringent standards apply to predatory pricing claims under section two than to claims under the other antitrust laws. The Court explicitly distinguished between section two violations, which require a dangerous probability of success, and violations of the other antitrust laws, which require only a reasonable prospect of recoupment. *See Brook Group,* —— U.S. at ——, 113 S.Ct. at 2588; *see also id.* —— U.S. at ——, at 2587

("[W]e interpret § 2 of the Sherman Act to condemn predatory pricing when it poses 'a dangerous probability of actual monopolization,' whereas the Robinson–Patman Act requires only that there be a 'reasonable possibility' of substantial injury to competition before its protections are triggered.") (citations omitted).