**STATE OF CALIFORNIA, DEPARTMENT OF EDUCATION, Petitioner,**

v.

**William J. BENNETT, Secretary, Department of Education, Respondent.**

**No. 86–7587.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 17, 1987.

Decided Feb. 23, 1988.

As Amended April 15, 1988.

---

Taylor S. Carey, Staff Counsel, California State Dept. of Education, Sacramento, Cal., for petitioner.

Richard B. Mellman, Office of the Gen. Counsel, U.S. Dept. of Education, Washington, D.C., for respondent.

Before CHOY, GOODWIN and BEEZER, Circuit Judges.

PER CURIAM:

The State of California Department of Education petitions for review of the final decision of the Secretary of Education ordering the state to refund a total of $410,872 in federal funds granted under Title I of the Elementary and Secondary Education Act and found to have been misspent. We deny the petition.

The Migrant Education Program (MEP), created by the 1966 amendments to Title I of the Elementary and Secondary Education Act of 1965[1], provides funding for state programs that address the special educational needs of the children of migrant agricultural workers. 20 U.S.C. §§ 2701, 2761–63 (1982). MEP enables state educational agencies to obtain annual grants from the United States Department of Education[2] to support their own migrant education programs. 20 U.S.C. § 2761(a) (1982).

The State Department of Education administers a MEP. The state received Title I MEP funds and in fiscal years (FY) 1980–82 provided approximately $9 million of those funds to the Butte County California Superintendent of Schools (BCCSS) as subgrants covering two program years, 1979–80 and 1980–81.[3] BCCSS used the subgrant to operate California's Mini-Corps Program.

Mini-Corps was designed to use college students as teaching assistants and as health and community aides for migrant children during the regular school and summer periods. One program under the auspices of Mini-Corps is the Counselor Training Program (CTP). CTP is a two-year graduate program at San Jose State University designed to provide local educational agency (LEA) staff and others with graduate training in migrant student counseling. The trainees were required to spend 20 percent of their time in supervised on-site counseling of migrant students at an LEA, pursuant to a formally and continually updated "Individualized Counselor Education Learning and Supervision Plan."

The Mini-Corps program provided funds to be expended for its travel costs. California paid a flat fee of $50 per month to student aides recruited from various two-year and four-year colleges. This flat fee was paid in lieu of all travel expenses incurred by the aides.

To ensure that recipients of MEP grants do not misspend federal funds, the Department's Office of Inspector General (OIG) has been authorized by Congress to conduct audits. 20 U.S.C.A. § 2835(a) (Supp. 1987). An audit by the OIG, covering FY 1979–1982, revealed deficiencies, totaling $410,872, in the documentation submitted by California. California's proffered documentation consisted of an overview chart and summary report of supervised counseling which was performed by the counselor-trainees in the first cycle, 1979 and 1980, of CTP, as well as log sheets for some of the counselor-trainees. With respect to 1980, the documentation covered only a portion of that year and did not thoroughly establish on-site trainee supervision or the use of Supervision Plans. The proffer also included an external evaluation of the CTP consisting of questionnaires completed by trainees. None of this documentation covers the second cycle, 1981 and 1982.

---

1. Pub.L. No. 89–10, § 1, 79 Stat. 27 (1965), as amended, 20 U.S.C. §§ 2701 *et seq.* (1982).

2. The Department, created in 1980, superseded the Office of Education. 20 U.S.C. §§ 3441(a)(1), 3507 (1982).

3. The federal fiscal year runs from October 1 to the following September 30. Thus, FY 1979 is October 1, 1978 to September 30, 1979.

California contested the findings of the OIG report and submitted documentation and related materials to the Assistant Secretary. The documentation included names of the CTP participants and designated supervisors, and their location of placement, and other information about the program's design. The submitted documentation contained no identifying information on any CTP participant and no evidence that any participant's CTP training related to work that had been done or would be done for California's MEP. Furthermore, California supplied no new information as to the reasonableness of its travel costs defrayment program. The Assistant Secretary, in his June 28, 1984 final audit determination, concluded that California had provided no information that demonstrated that any of the $492,610 of FY cycle covering 1980–82 MEP funds involved ($209,828 for CTP and $282,782 for travel costs) were properly spent. It therefore demanded a return of those funds.

On August 2, 1984, California requested the Education Appeals Board (EAB) to review the Assistant Secretary's final audit determination. The EAB directed that California submit with its opening brief any documentary evidence or affidavits that it wished to have entered into the record.

California's brief contained only the previously submitted affidavit of Dr. Gary Johnson, CTP director. The Assistant Secretary's reply brief objected to the uncorroborated hearsay statements of Johnson and to California's failure to present evidence that would demonstrate the allowability of expenditures at issue. In response, California submitted a closing brief, which appended further evidentiary submissions. But for the coded logs of CTP participants, which registered their contacts with migrant children for a portion of the 1978–80 program cycle, California's information contained no new identifying information on either the CTP participants or the activities they actually performed, and no evidence of the reasonableness of the Mini–Corps travel charges.

California's subsequent request for an evidentiary hearing and an opportunity for oral argument stated:

Appellant desires to present testimony and submit attendant supporting documentary evidence on the following issues. The Mini–Corps Counselor Training Program and the Student Aide travel defrayment stipend.

To insure a complete explication of the facts of the case Appellant intends to call at least four witnesses. Travel expenses to Washington, D.C. for these individuals and Appellant's counsel would prove unduly burdensome to the State Department of Education. In order to minimize these expenses, I request that a combined session of evidence taking and oral argument be held in California pursuant to 78 [sic] C.F.R. 78.72 on a date that best accommodates the Panel and parties.

The Assistant Secretary opposed the request for an evidentiary hearing as unnecessary and unsupported by any showing that California's briefs were an unreasonable vehicle for fully presenting its positions, or that California had any "new" evidence that it could not have presented earlier.

On February 18, 1986, the EAB denied California's request for an evidentiary hearing. Noting the previous written submissions, the EAB explained that it believed that these additions to the initial hearing record provide sufficient evidence upon which to render its decision on the two issues in this appeal.[4] At no time before, during, or after the March 13, 1986 oral argument, did California renew its request for an evidentiary hearing or provide an offer of proof regarding the testimony that would have been heard.

In its May 15, 1986 initial decision, the EAB concluded that the CTP participants'

---

4. 34 C.F.R. § 78.71 (1987) governs requests for evidentiary hearings. It states:
   The parties shall present their positions through briefs and the submission of other documents but may request an oral argument or evidentiary hearing. The Panel shall determine whether an oral argument or evidentiary hearing is needed to clarify the position of the parties.

student contact logs coupled with the affidavit of Johnson satisfactorily demonstrated the allowability of all CTP expenditures for the second cycle covering FY 1980–82. The EAB otherwise concluded that California had failed to justify BCCSS's travel defrayment method, and recommended that California refund to the Department the $282,782 that it improperly charged to travel costs.

On July 18, 1986, after reviewing the parties' comments and responsive comments on that initial decision, the Secretary issued a decision that set aside the Panel's findings on the CTP costs for the second and third year, and modified its reasoning on the Mini–Corps travel expenditures. The Secretary concluded that California had submitted no competent evidence on the adequacy of the implemented CTP for the 1980–81 and 1981–82 project years, and so was responsible for refunding $128,090 (out of the $209,828 total) of the disputed MEP funds. The Secretary affirmed the EAB's decision that California return the $282,782 of MEP funds charged to Mini–Corps travel costs, but supplemented the EAB's reasoning by finding both a second violation of law and rejecting as unsupported California's proffered justification of its defrayment system in alleged clerical savings. This decision brought the total to $410,872. The Secretary's decision became final on September 16, 1986. California timely appealed to this court on September 23, 1986. *See* 20 U.S.C.A. §§ 1234d, 2851 (1982). We review that decision pursuant to 20 U.S.C. §§ 1234a(d), 1234d and 2851 (Supp. 1986 & 1987).

I. Propriety of Expenditures under CTP

■ As a condition to receiving Title I funds, states that choose to participate in the program give assurances that they will abide by the requirements of Title I and that they will expend funds in a manner not inconsistent with the terms of the grant agreement. *Bennett v. Kentucky Dept. of Education*, 470 U.S. 656, 666, 105 S.Ct. 1544, 1550–51, 84 L.Ed.2d 590 (1985); *Bell v. New Jersey*, 461 U.S. 773, 790–91, 103 S.Ct. 2187, 2197, 76 L.Ed.2d 312 (1983). If those assurances are not complied with, the Secretary is authorized to direct that those funds be returned. *See Bennett*, 470 U.S. at 663, 105 S.Ct. at 1549; *Bell*, 461 U.S. at 791, 103 S.Ct. at 2197.

Pursuant to § 1234a(b), California bears the burden of "demonstrat[ing] the allowability of [disputed] expenditures." *Bennett*, 470 U.S. at 665, 105 S.Ct. at 1550. With respect to 1979 and 1980, the first cycle, California provided substantial documentation on the CTP that included an overview chart and a summary report of supervised counseling provided by the participants, various trainee logsheets and an external evaluation of the program consisting of questionnaires completed by counselor trainees. In contrast, documentation provided by California relating to CTP-supervised counseling for the second cycle, 1981 and 1982, primarily consisted of an affidavit of CTP project director Johnson. Both the EAB and the Secretary deemed Johnson's affidavit as too general in its discussion on the nature and extent of the counseling services performed. California produced no corroborating evidence demonstrating that the counseling services actually were provided or supervised by LEA personnel as included in the grant proposal. The affidavit does not distinguish between facts known to Johnson and those assumed by him, and does not establish that the CTP trainees did in fact spend 20 percent of their time providing counseling services. In explanation, Johnson's affidavit notes that the log-sheet system was discontinued during the second cycle of the program. In place of the log-sheet system, contracts of performance and competencies were used to set forth the counseling contacts which the students aides were to complete. To counter the contention that Johnson lacked any personal knowledge whether the CTP trainees did in fact spend 20 percent of their time providing counseling services, Johnson, in his affidavit, attests that each student who received a pupil personnel services certificate met the program requirements that they spend 20 percent of their semester in supervised, on-site counseling of migrant students at LEA.

The Secretary determined this proffered documentation was insufficient to show the type and frequency of on-site, supervised counseling performed by CTP program trainees in 1981 and 1982, and that California violated the assurances it gave by failing properly to document the amount of federal funds expended for CTP ($55,984 and $72,106 for 1981 and 1982, respectively). The Secretary therefore concluded that the expended funds had been misspent and must be refunded.

■ In reviewing the Secretary's determination that California misspent Title I funds, we must consider whether the findings are supported by substantial evidence and reflect an application of the proper legal standards. *Bennett*, 470 U.S. at 666, 105 S.Ct. at 1550; *California Dept. of Educ. v. Bennett*, 833 F.2d 827, 830 (9th Cir.1987). Substantial evidence, moreover, must create more than a suspicion of the existence of a fact to be established; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa View Community Hosp., Inc. v. Heckler*, 720 F.2d 1086, 1090 (9th Cir.1983) (quoting *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966)). As a reviewing court we do not reweigh the evidence; rather our function is limited to determining whether there is substantial evidence in the record to support the basis and inferred facts found by the Secretary, notwithstanding that two inconsistent conclusions may be drawn from the evidence. *See Villa View*, 720 F.2d at 1090–91.

### A. CTP Expenditures

■ The primary evidence that California offers to justify its expenditures is Johnson's affidavit. Johnson's affidavit was not self supporting because it contained opinions and conclusions. It was not corroborated by evidence demonstrating that the counseling services were actually provided or supervised by LEA personnel. The EAB determined that Johnson's affidavit was sufficient in demonstrating the propriety of the expenditures during the second cycle. The Secretary found that the affidavit was inadequate in showing the propriety of those expenditures. We note the conflict between the findings of the EAB and the Secretary, but we are not in a position to reweigh the evidence. The Secretary made the final determination. It was based on the insufficiency of Johnson's personal knowledge and the conclusions in the uncorroborated affidavit. That affidavit was deemed insufficient to show the type and frequency of on-site supervised counseling performed by CTP trainees in 1981 and 1982. As the Secretary's determination reflects a rational basis, we are not at liberty to reject the Secretary's determination merely because another inference may be drawn as to the propriety of CTP expenditures. *See Cranston v. Clark*, 767 F.2d 1319, 1321 (9th Cir.1985) ("possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence"). Therefore, California failed to prove its case and must refund the amount of $128,090.

### B. Mini–Corps Travel Costs

■ The Secretary next determined, in accord with the EAB's assessment, that California was obligated to refund $282,782, because of its failure to demonstrate the reasonableness of travel costs incurred for the Mini–Corps program. Costs may be allocated only to the extent "consistent with policies, regulations, and procedures that apply uniformly to both federal assisted and other activities of the unit of government of which the grantee is a part." 34 C.F.R. pt. 74, app. C, pt. I C.1.d (1979 & 1980). Also, the charges must be "consistent with those normally allowed ... in nonfederally sponsored activities." 34 C.F.R. pt. 74, app. C, pt. II. B.28 (1979 & 1981). The Secretary's interpretation of the regulations it administers is entitled to substantial deference. *See California v. Bennett*, 833 F.2d at 830; *Department of Educ., State of Hawaii v. Bell*, 770 F.2d 1409, 1413 (9th Cir.1985). Our review here is limited to insuring that the Secretary's determination is not plainly erroneous or inconsistent with the regulations. *California v. Bennett*, 833 F.2d at 830.

The initial audit report notes that the disbursing LEA, BCCSS operated under a local policy of reimbursing travel on a uniform, per mile basis, as documented by travel vouchers containing times, locations, miles and distances. Again, California gave assurances that it would apply the funds in a manner consistent with regulation directives. However, California paid a flat fee of $50 per month to student aides recruited from various two- and four-year colleges. This is a perfectly reasonable way to spend its own money, but it is not a federally approved way to spend federal money. The initial audit report reflects that the disbursing LEA functioned under a local policy of reimbursing travel on a uniform, per mile basis, as documented by travel vouchers containing times, locations, miles and distances.

California attempts to justify the reasonableness of its simplified travel program by arguing that the Mini–Corps program was *sui generis* and that the imprecision of the flat fee system was more than offset by lower clerical costs than those associated with a mileage based method. California's decision to operate the Mini–Corps travel program on a flat fee basis may have saved money over-all, but does not comport with the clearly expressed regulatory requirement that federal funds be disbursed according to procedures that uniformly are applied to federal as well as nonfederal programs. California therefore failed to sustain its burden of showing that this flat fee method comported with "charges consistent with those normally allowed in like circumstances in nonfederally sponsored activities," 34 C.F.R. pt. 74, app. C, pt. II, B.28 (1979 & 1981), and that such costs have been charged on an actual basis, on a per diem or mileage basis in lieu of actual costs incurred, or on a combination of the two. *Id.* California has failed to demonstrate the allowability of the travel costs under the Mini–Corps program. The Secretary's decision reflects an application of the proper legal standards. Therefore, we will not disturb the Secretary's determination that California must refund misspent funds totaling $282,782. *California v. Bennett*, 833 F.2d at 830.

Finally, in order to recapture the full value of the misspent fund, interest must be charged. *Id.* at 832–33. Moreover, the administrative determination that funds have been misspent "implicitly includes a claim for interest." *Id.* at 833.

## II. EAB's Denial of Request for Evidentiary Hearing

### A. Propriety of California's Claim on Appeal

■ The Department argues that because California failed to raise its objection to the denial of evidentiary hearing request, it waived its right to present the issue upon appeal. To preserve an issue for review on appeal that issue must have been raised at the appropriate time during the administrative proceeding. *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952); *Reid v. Engan*, 765 F.2d 1457, 1460 (9th Cir.1985). Although appellate courts have the competence to consider an issue raised for the first time on appeal, they do not, as a general rule do so. *Bolker v. Commissioner*, 760 F.2d 1039, 1042 (9th Cir.1985).

This circuit has recognized three exceptions to the general rule: (1) "the 'exceptional' case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process"; (2) "when a new issue arises while appeal is pending because of a change in the law"; or (3) "when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Id.* (citations omitted). If one of the exceptions applies, moreover, this court has discretion to address the issue. Thus, the denial of California's request for an evidentiary hearing will be addressed on the ground that the issue presents a question of law, which does not require any additional factual development. *California Dept. of Educ. v. Bennett*, 829 F.2d 795, 798 n. 9 (9th Cir.1987).

### B. Propriety of Denial of Request for Evidentiary Hearing

■ California argues here that any evidentiary insufficiencies in its presenta-

tion to the EAB or the Secretary on either the CTP or the travel defrayments were the consequence of the EAB's denial of its request for an evidentiary hearing. The EAB has discretion in determining whether an evidentiary hearing is necessary for the sake of clarifying the position of the parties. 34 C.F.R. § 78.71 (1987). In addition, the propriety of an evidentiary hearing is determined by the existence of an issue as to any disputed material fact. *General Motors Corp. v. Federal Energy Regulatory Comm'n*, 656 F.2d 791, 794–95 (D.C. Cir.1981). An abuse of that discretion is measured by an arbitrary and capricious standard.

■ The record reveals that California requested an evidentiary hearing so that it could present evidence documenting the disputed expenses, namely testimony of four unidentified witnesses and attendant documentary evidence. In its request, California made no allegations as to the existence of any issue of disputed material fact; therefore, California failed to provide an adequate proffer supporting its request. *Id.* at 798 n. 20. The record, in addition, demonstrates that the EAB denied the evidentiary hearing request because it believed that the additions to the initial hearing record[5] provided sufficient evidence upon which it could render its decision. In fact, it was California's presentation of this documentary evidence that convinced the first level of review that California had sustained its burden in proving that $209,828 of Title I migrant education program funds were properly expended during 1979 and 1980. On the whole record, we conclude that the EAB's denial of California's request for an evidentiary hearing was not arbitrary and capricious. The Secretary's decision is affirmed.

PETITION DENIED.

---

5. These additions include initial briefs, California's closing brief, the Department's responsive reply brief, substantial additional documentary evidence concerning Mini–Corps and travel costs stipends.