

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-15-1996

# State of PA v. Secretary of Dept Ed

Precedential or Non-Precedential:

Docket 95-3308

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

## Recommended Citation

"State of PA v. Secretary of Dept Ed" (1996). *1996 Decisions.* Paper 177.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/177

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 95-3308

————————


STATE OF PENNSYLVANIA

                    Petitioner,

        vs.

RICHARD W. RILEY, Secretary of the United
States Department of Education,

                    Respondent.


————————


APPEAL FROM THE DECISION
OF THE UNITED STATES DEPARTMENT OF EDUCATION

(No. 93-136-R)
(No. 93-44-R)

————————


ARGUED JANUARY 23, 1996

BEFORE:  MANSMANN and LEWIS, Circuit Judges
and RESTANI, Judge, Court of International Trade.

(Filed: May 15, 1996)


————————



Michael Brustein
Kristin E. Hazlitt (ARGUED)
Brustein & Manasevit
3105 South Street, N.W.
Washington, DC  20007

    Attorneys for Respondent

Lynette E. Charboneau (ARGUED)
United States Department of Education
600 Independence Avenue, S.W.
Washington, DC  20202

        Attorney for Respondent

                    _____

                OPINION OF THE COURT
                    _____


LEWIS, Circuit Judge.
        The Commonwealth of Pennsylvania's Department of
Eduction ("PDE") appeals from a final decision of the United
States Secretary of Education requiring Pennsylvania to refund
$3,082,088.95 to the United States.  PDE argues that the
Secretary erred in denying PDE an evidentiary hearing, and that
the Secretary's decision violates Pennsylvania's sovereign right
to interpret its own statutes.  For the following reasons, we
will affirm the decision of the Secretary.
                            I.
        The underlying facts of this case involve the interplay
between federal and state programs which fund vocational
education, and the requirements states must meet in order to
receive federal funding.  Under the Perkins Vocational Education
Act, 20 U.S.C.  2301-2471 (1988) ("Perkins Act"), federal grants
are issued to the states to "assist the States to expand,
improve, modernize, and develop quality vocational education
programs in order to meet the needs of the Nation's existing and
future work force for marketable skills and to improve
productivity and promote economic growth."  20 U.S.C.  2301(1).
The Perkins Act defines vocational education as:
        organized educational programs which are
        directly related to the preparation of
        individuals in paid or unpaid employment in
        such fields as agriculture, business
        occupations, home economics, health
        occupations, marketing and distributive
        occupations, technical and emerging
        occupations, modern industrial and
        agriculture arts, and trades and industrial
        occupations, or for additional preparation
        for a career in such fields, and in other
        occupations, requiring other than a
        baccalaureate or advanced degree and
        vocational student organization activities as
        an integral part of the program; and for
        purposes of this paragraph, the term
        "organized education program" means only (A)
        instruction (including career guidance and
        counseling) related to the occupation or

occupations for which the students are in training or instruction necessary for students to benefit from such training, and (B) the acquisition (including leasing), maintenance, and repair of instructional equipment, supplies, and teaching aids; but the terms do not mean the construction, acquisition, or initial equipment of buildings, or the acquisition or rental of land.

20 U.S.C.  2471(31) (emphasis added).

Funding under the Perkins Act, however, is contingent upon the state maintaining or exceeding its own level of financial support for these programs.  According to the Act:

No payments shall be made under this chapter for any fiscal year to a State unless the Secretary determines that the fiscal effort per student or the aggregate expenditures of such State for vocational education for the fiscal year preceding the fiscal year for which the determination is made, equaled or exceeded such effort or expenditures for vocational education for the second preceding year.

20 U.S.C.  2463(a).  This requirement is reflected in the Act's implementing regulations which provide that:

[t]he Secretary may not make a payment under the Act to a State for any fiscal year unless the Secretary determines that the fiscal effort per student, or the aggregate expenditures of that State, from State sources, for vocational education for the fiscal year (or program year) preceding the fiscal year (or program year) for which the determination is made, at least equaled its effort or expenditures for vocational education for the second preceding fiscal year (or program year).

34 C.F.R.  401.22(a) (1990).  Thus, in order to receive federal funding under the Perkins Act, a state must maintain or increase its level of financial support for vocational education within the state to qualify for funding for the next year.  As the federal funding is provided to the states before the Secretary determines whether the state qualifies under this section, actions brought by the Secretary take the form of actions for refunds.

The dispute in this case involved whether a particular Pennsylvania program, the Customized Job Training Program ("CJT"), is a vocational education program for the purpose of Perkins Act funding.  According to the legislative intent, the CJT was created:

to meet the training needs of the State's new and expanding business by enhancing the skills of workers of this Commonwealth.  In

> so doing, funding shall be dedicated towards
> training projects which result in net new
> full-time employment opportunities,
> significant wage improvements, the retention
> of otherwise lost jobs or other conditions
> which would offer substantial economic
> benefit to this Commonwealth. Recognizing
> that many regions of the State remain
> economically distressed, customized job
> training programs should attempt to meet the
> special job training needs of these areas.

App. at 54 (emphasis added). During the period at issue, the PDE had the primary responsibility for approving applications and drafting regulations under the CJT. The program, however, was administered by an inter-agency advisory task force comprised of representatives from the Pennsylvania Departments of Labor and Industry, Commerce, Education, and the Economic Development Committee of the Cabinet.

The United States Department of Education concluded that during fiscal years ("FY") 1989 and 1991, Pennsylvania failed to maintain its level of effort on either a per-student or aggregate basis. According to the United States, Pennsylvania's aggregate expenditures declined from $67,322,560 in FY 1987 to $60,436,193 in FY 1988, and its per-student expenditures declined from $283.95 in FY 1987 to $283.04 in FY 1988. App. at 161, 163, 165-66. Pennsylvania's aggregate expenditures also declined from $64,026,598 in FY 1989 to $59,917,439 in FY 1990, and its per-student expenditures declined from $348.41 in FY 1989 to $332.39 in FY 1990. These decreases were discovered during audits conducted ending in FY 1989 and FY 1991, and resulted from Pennsylvania's decision not to include the CJT program in its maintenance of effort after having done so for five years.

Pursuant to the Perkins Act, the auditors questioned the total amount of federal vocational education funds expended during FY 1989 ($41,827,000) and FY 1991 ($39,603,000). App. at 154, 159. After reviewing further information provided by Pennsylvania, the Assistant Secretary sustained the finding that Pennsylvania failed to maintain its level of fiscal effort in FY's 1989 and 1991, but only demanded a refund of the amounts Pennsylvania failed to maintain on a per-student basis, totaling $3,082,088.95. Pennsylvania appealed to the Office of Administrative Law Judges.

Before the ALJ, Pennsylvania presented evidence, consisting of nineteen exhibits including affidavits, and legal arguments in seeking to establish that it had complied with the maintenance of effort requirement for FY's 1989 and 1991. Pennsylvania's theory was that the CJT costs should not have been included in the calculations as state funds spent on vocational education because: (1) it was within the sole discretion of the state to determine whether the CJT program was a vocational education program for the purposes of determining its maintenance of effort; and (2) the CJT program did not fall under the definition of "vocational education" as set forth in the Perkins Act. 20 U.S.C. 2471(31).

Pennsylvania requested an evidentiary hearing before the ALJ, alleging that factual issues remained in dispute. PDE claimed that an evidentiary hearing was necessary in order to understand the nature of the CJT program, and with its brief and reply brief attached a list of ten witnesses, three affidavits, and other documentary evidence to support its claim. The ALJ held a prehearing conference in which he requested stipulations to certain proposed evidence. After the conference, the ALJ allowed PDE to submit an amended witness list which included a brief statement as to why each proposed witness' testimony was important to the determination. According to PDE, the witnesses' testimony would support its claim that the purpose of CJT was to provide incentives to businesses and promote economic development in Pennsylvania, rather than to provide vocational education to adults.

The ALJ then issued his initial decision. He found that PDE had failed to maintain its fiscal efforts for the year in question and that an evidentiary hearing was unnecessary. The decision concluded that federal rather than state law controls which state activities fall within the federal definition of vocational education for calculating maintenance of effort, and that the CJT funds fell within the federal definition. The ALJ further found that Pennsylvania's characterization of the CJT program as a business incentive program was consistent with vocational education under the Perkins Act, and that the funds, therefore, had to be included in determining Pennsylvania's maintenance of effort. As to the evidentiary hearing, the ALJ concluded, based upon the completeness of the record, the briefs and his review of the appropriate submissions,

> that an evidentiary hearing would serve no useful purpose, and . . . is not needed to resolve any material factual issue in dispute. In view of the conceded facts, what we have remaining is more in the nature of a dispute as to a matter of law, i.e., the application of specific Federal statutory and regulatory definitions in the face of mainly agreed facts.

App. at 11 (ALJ's Decision) (emphasis in original). The Secretary certified the ALJ's decision as a final decision of the Department, and this appeal followed.

On appeal, Pennsylvania "is not requesting that this Court reconsider the Department's application of the federal definition of vocational education, or that the Court consider the questions of fact surrounding the State CJT program. Pennsylvania only asks the Court to consider the propriety of the issuance of the Department's Decision without an evidentiary hearing and without fully considering the evidence in the record regarding the State's interpretation of the CJT program." Appellant's Br. at 3-4.

## II.

We have jurisdiction to review the Secretary's decision under 20 U.S.C. 1234g. In general, when reviewing the Secretary's decision, we must determine whether the Secretary's

findings of fact are supported by substantial evidence and reflect the application of the proper legal standards. Bell v. New Jersey, 461 U.S. 773, 792 (1983); Jones v. Sullivan, 954 F.2d 125, 127-28 (3d Cir. 1991). The Secretary's decision to grant an evidentiary hearing is discretionary, however, and will only be reversed if it is arbitrary and capricious. California v. Bennett, 843 F.2d 333, 340 (9th Cir. 1988); Bell Telephone Co. of Pa. v. FCC, 503 F.2d 1250, 1267 (3d Cir. 1974).

## III.
### A.

Pennsylvania argues that the ALJ's failure to hold an evidentiary hearing denied it the opportunity to present complete factual evidence as to the nature of the CJT program. Whether an evidentiary hearing is necessary, however, is left to the Secretary's sound discretion. An administrative agency need not provide an evidentiary hearing when there are no disputed material issues of fact, Moreau v. F.E.R.C., 982 F.2d 556, 568 (D.C. Cir. 1993); Altenheim German Home v. Turnock, 902 F.2d 582, 584 (7th Cir. 1990); California v. Bennett, 843 F.2d at 340; Bell Telephone Co. of Pennsylvania v. FCC, 503 F.2d at 1267-68; or when the dispute can be adequately resolved from the paper record. Puerto Rico Aqueduct & Sewer Auth. v. E.P.A., 35 F.3d 600, 606 (1st Cir. 1994); Louisiana Ass'n of Indep. Producers and Royalty Owners v. FERC, 958 F.2d 1101, 1113-15 (D.C. Cir. 1992); City of St. Louis v. Department of Transp., 936 F.2d 1528, 1534 n.1 (8th Cir. 1991). The Secretary will abuse its discretion only when the complaining party demonstrates that the failure to provide an evidentiary hearing denied the party "the opportunity to speak meaningfully to the issues before the [Secretary]." Bell Telephone, 503 F.2d at 1268.

The relevant portions of the Department of Education's regulations provide that:

an ALJ conducts the hearing entirely on the basis of briefs and other written submissions unless --

(1) The ALJ determines, after reviewing all appropriate submissions, that an evidentiary hearing is needed to resolve a material factual issue in dispute.

34 C.F.R. 81.6(b)(1). Proceedings before the Office of Administrative Law Judges, therefore, are generally conducted on the basis of a written record alone. Evidentiary hearings are authorized, but only when the ALJ determines that one is "needed" to resolve a material factual issue. Consequently, the narrow predicates for an evidentiary hearing may be summarized simply and succinctly as: (1) a disputed material issue of fact; and (2) a need to resolve it.

The Secretary's decision that no evidentiary hearing was necessary was not arbitrary and capricious.

First, there is simply no dispute as to any material issues of fact in this case. Neither the Secretary nor the ALJ challenged Pennsylvania's "factual" claim that the CJT is "viewed . . . as a labor and economic development program," Appellant's

Br. at 17.  For example, the ALJ noted that:

> Certainly, it should not be surprising that a
> vocational education program would (also)
> serve "the needs of industry," and notbenefit "only" individuals entering fields
> not requiring baccalaureates or advanced
> degrees.  This would appear to be true of
> virtually any vocational education program.

App. at 9 (ALJ Decision) (emphasis in original).  In fact, the Perkins Act, itself, was enacted, inter alia, "to improve productivity and promote economic growth."  20 U.S.C.  2301(1).  Similarly, despite Pennsylvania's remonstrances over the goals and objectives of the program, there was no dispute over any of the specific job training activities carried out under CJT funding, and PDE offered no evidence to demonstrate that the job training activities funded by the CJT program did not fit the Perkins Act's definition of vocational education.  Accordingly, we find that the ALJ was correct in concluding that "[i]n view of the conceded facts, what we have remaining is more in the nature of a dispute as to a matter of law, i.e., the application of specific Federal statutory and regulatory definitions in the face of mainly agreed facts."  App. at 11 (ALJ Decision).

Second, even if there were disputed material issues of fact, the written record was adequate to resolve any remaining issues.  Pennsylvania was permitted to submit substantial evidence on several occasions to the effect that the CJT was a business incentive rather than vocational education program.  Even assuming that "oral testimony provides a far more complete and persuasive analysis of disputed facts than written documentation," as PDE contends, there is absolutely nothing before us to demonstrate that the written record was inadequate.  Three of the proposed witnesses filed affidavits, and PDE's argument was expounded upon at great length in its submissions.  Indeed, the testimony of the potential witnesses appears to be cumulative at best.  Given the breadth and depth of the written record, we cannot say that the ALJ's conclusion that "[t]he opinions and credibility of lay witnesses (e.g., Pennsylvania state employees) explored on direct or cross-examination as to the State's intentions and objectives in administering the CJT program would add nothing material to the limited issues involved in this proceeding," App. at 11 (ALJ Decision), was arbitrary and capricious.

But in the end, Pennsylvania's characterization of the program as non-vocational is irrelevant in any event.  The Perkins Act, not the Commonwealth of Pennsylvania, defines what constitutes vocational education under the Act.  20 U.S.C.  2471(31).  Thus, Pennsylvania's complaint boils down to nothing more than a simple dissatisfaction with the conclusion reached by the ALJ after applying the uncontested law to undisputed material facts.  Surprisingly, however, Pennsylvania does not challenge the Secretary's substantive conclusion or its factual underpinnings.  Under these circumstances, the opportunities provided by the Secretary permitted Pennsylvania to speak meaningfully to any factual issues presented in this matter.  As

such, the Secretary's determination that an evidentiary hearing was unnecessary was not arbitrary and capricious.

B.

Pennsylvania's final argument is that the Secretary's decision impinges upon its right to interpret its own laws. According to Department of Education precedent, "it is a wellsettled maxim of federalism that Federal tribunals should defer to a state's interpretation of its own laws."  In re Oregon State System of Higher Education, No. 92-25-SP, Final Decision, at 22, 1993 WL 452646, at *11 (Educ. Appeals Bd., Apr. 5, 1993). PDE argues that the ALJ's conclusion that the CJT program is a vocational education program as provided by the Perkins Act conflicts with Pennsylvania's right to characterize the CJT program as a business incentive program.  We disagree.  We conclude that the ALJ's determination does not in any way infringe upon Pennsylvania's sovereign authority.

Unlike the cases cited by the PDE in its brief, this case does not involve a federal agency telling a state how to interpret and implement a state statute as would occur, for example, if the state interpreted the word "shall" in a state statute to be discretionary, and despite this interpretation, the Secretary interpreted it as mandatory.  See In re Gulf Coast Trades Center, No. 89-16-S, Decision of the Secretary, at 2-3 (Oct. 19, 1990) (concluding that the Secretary had to accept the state's interpretation of the statute despite the plain reading of the text).  PDE quotes Arkansas Power & Light Co. v. Federal Power Comm'n, 156 F.2d 821, 833 (D.C. Cir. 1946), rev'd 330 U.S. 802 (1947), for the proposition that:

Even if it be said that the [agency] has the right to exercise the judicial function of interpreting its own organic act, it could hardly be added that that agency also possesses the exclusive right to interpret a statute of one of the States of the Union, and to decide the relation between that state legislation and its own Act.

While this language appears to lend some support for PDE's argument, the quote is taken out of context.  The quoted portion of the opinion does not stand for the principle that an agency must defer to the state when interpreting a state statute in conjunction with federal law.  Instead, it stands for the proposition that a sovereign state need not "appear before a federal administrative body in order to have determined the legal effect of one of its statutes considered in connection with a related federal statute."  Id.  In other words, administrative agencies do not have exclusive jurisdiction when it comes to interpreting state law in conjunction with federal law.  But neither of these circumstances is presented in this case.  The Secretary merely applied the federal definition of vocational education for the purposes of the Perkins Act to determine whether or not the activities carried out under the CJT program fit within that definition.  Pennsylvania can characterize its program anyway it pleases.  If, however, the Commonwealth wishes to receive federal funding under the Perkins Act, it will be

subject to the requirements established by federal law.

The Perkins Act explicitly defines the activities that constitute vocational education under the Act, and vests in the Secretary the responsibility for determining whether or not a state program funds vocational education for the purposes of determining the eligibility to receive federal funding under the Act. 20 U.S.C. 2463(a). In this context, the Secretary's application of federal law to the undisputed facts does not impinge upon the State's authority to interpret its own laws. See In re Webster Career College, Inc., No. 91-39-SP, Decision of the Secretary (July 23, 1993) (concluding that the State's authority is not being impinged because federal law made the Secretary responsible for defining the term "academic year"). The Secretary, not the state, is responsible for interpreting federal law, and in cases which involve an agency's interpretation of federal law and its own regulations, we must defer to the Secretary. Chevron, USA, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-45 (1984); Passaic Valley Sewerage Comm'n v. Department of Labor, 992 F.2d 474, 478 (3d Cir. 1993).

IV.

For the foregoing reasons, we will affirm the decision of the Secretary of the United States Department of Education.