Evette ELSENETY, M.D.,et al.,
Petitioners–Appellants,

v.

HEALTH CARE FINANCING ADMIN-
ISTRATION, Respondent–Appellee.

No. 02–3004.

United States Court of Appeals,
Sixth Circuit.

Dec. 9, 2003.

Frederick B. Bellamy, Keith J. Soltis, Vander Male, Bellamy & Gilchrist, Detroit, MI, for Petitioner.

Barbara F. Altman, U.S. Department of Health & Human Services, Office of the General Counsel, Chicago, IL, for Respondent.

Before GUY, SUHRHEINRICH, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

Petitioners–Appellants Evette Elsenety and doctors from 12 laboratories owned by the Oakland Medical Group, P.C. ("OMG") brought this appeal on behalf of their respective laboratories from the decision of the Departmental Appeals Board of the United States Department of Health and Human Services ("DAB"). The DAB affirmed the decision of the Administrative Law Judge ("ALJ"), which sustained the determination of the Health Care Financing Administration ("HCFA")[1] to revoke the Clinical Laboratory Improvement Amendment ("CLIA") certificates for each of the Petitioners. Because the relevant statutes support HCFA's determination, we affirm the agency's decision to revoke the CLIA certificates.

## I.

On July 15, 1999, the HCFA sent Robert Moretsky ("Moretsky"), director of a clinical lab in Warren, Michigan, notice of its intent to revoke the CLIA certificate for the lab based upon specified deficiencies at that location. While the notice was sent to the Warren Lab, notice was not separately sent to OMG, the corporate owner of the lab.

Without a CLIA certificate, a clinical laboratory is statutorily prohibited from operating. See 42 U.S.C. § 263a(b). The Warren Michigan laboratory therefore filed for review by an ALJ, and on July 18, 2000, the ALJ upheld HCFA's decision to revoke the certificate. That decision was subsequently appealed to the Department of Health and Human Services Departmental Appeals Board ("DAB"), which affirmed the decision of the ALJ in a final order, which was not appealed, and which is not before this court.

Following the ALJ's decision, HCFA sent another letter dated October 17, 2000,

1. For the sake of consistency, the parties and this court refer to Respondent as HCFA. However, effective July 5, 2001, the agency changed its name to the "Centers for Medicare and Medicaid Services." 66 Fed. Reg. 35437 (July 5, 2001).

to Moretsky, notifying him that HCFA was implementing the revocation as to the Warren, Michigan, lab. The letter also stated:

42 U.S.C. § 263a(i)(3) and 42 C.F.R. § 493.1840(a)(8) prohibit the owner and operator of the laboratory (including the laboratory director-*see* 42 C.F.R. § 493.2) from owning or operating a laboratory for two years from the date of the revocation. If you are not the sole owner of your laboratory, we rely upon you to inform the other owners of this prohibition or, if you prefer, to send us their names and addresses so that we may do so.

On October 24, 2000,[2] Keith Soltis as attorney for OMG sent a letter to HCFA listing the addresses and CLIA numbers of the OMG's laboratories. Appellants claim without support that the letter was in furtherance of "settlement negotiations," an assertion that HCFA disputes.

Because 42 U.S.C. § 263a(i)(3) prohibits a "person who has owned or operated a laboratory which has had its certificate revoked" from owning a CLIA certified laboratory within two years of such revocation, HCFA sent a letter dated November 7, 2000, to the sixteen labs owned by OMG, notifying the directors of those labs that HCFA was initiating action to revoke their CLIA certificates.

On November 16, 2000, OMG and the sixteen doctors who operated these facilities requested a hearing before an ALJ to contest the proposed revocation, alleging that the individual laboratory directors are not owners for the purposes of the statute and should not be sanctioned, and that the owner-operator ban was not intended to be applied to corporate owners. On June 12,

2001, the ALJ sustained HCFA's revocation of the 16 CLIA certificates because OMG is the owner of the labs, and the statute does reach corporate owners. OMG timely requested review by the DAB, which issued a decision on November 8, 2001, sustaining the decision of the ALJ.

## II.

This appeal was timely filed by 12 of the 16 laboratories pursuant to 42 U.S.C. § 263a(k)(1), which provides for judicial review as follows:

Any laboratory which ... has had its certificate suspended, revoked, or limited under subsection (i) of this section may, at any time within 60 days after the date the action of the Secretary ... becomes final, file a petition with the United States court of appeals for the circuit wherein the laboratory has its principal place of business for judicial review of such action.

*Id.*

This court has jurisdiction of this matter pursuant to 42 U.S.C. § 263a(k)(3), which defines this court's authority and standard of review as follows:

[T]he court shall have jurisdiction to affirm the action, or to set aside in whole or in part, temporarily or permanently. The findings of the Secretary as to the facts, if supported by substantial evidence, shall be conclusive.

42 U.S.C. § 263a(k)(3).

### A.

■ Appellants first claim that the October 24, 2000, letter in which OMG recognized ownership of the 16 labs should not have been considered by the ALJ or DAB because the letter was allegedly sent to

---

**2.** The letter was erroneously dated October 24, 1998. OMG has repeatedly cited to the improper date in an apparent attempt to raise questions of its credibility, but as the DAB noted, OMG's "facsimile produced a '10/24/00' date stamp on the letter, thus resolving any confusion about the date."

HCFA in the course of settlement negotiations, and it is therefore inadmissible under Fed.R.Evid. 408. Leaving aside the question of whether Appellants waived this claim by failing to properly raise it below, the DAB correctly found that R. 408 is not binding on ALJs. *See* 42 C.F.R. § 498.61 ("Evidence may be received at the hearing even though inadmissible under the rules of evidence applicable to court procedure."). This assignment of error is plainly without merit.

### B.

■ Appellants next argue that the ALJ and DAB erred in finding that "person" in the operative owner-operator ban applies to corporations. The relevant statute provides:

No *person* who has owned or operated a laboratory which has had its certificate revoked may, within 2 years of the revocation of the certificate, own or operate a laboratory for which a certificate has been issued under this section.

42 U.S.C. § 263a(i)(3) (emphasis added). The ALJ and DAB correctly found that because "person" is not otherwise defined in the statute, the meaning of "person" is provided by 1 U.S.C. § 1, which states that "unless the context indicates otherwise ... the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."

Without ever addressing 1 U.S.C. § 1, the Appellants attempt to make arguments that could plausibly fall within the context exception, both of which ultimately fail. First, Appellants point to 42 U.S.C. § 263a(i)(1)(A)-(G), which lists offenses that, if committed by an owner, operator, or employee of a lab may lead to revocation of a CLIA license. Appellants argue that these prohibited acts (which include making misrepresentations in obtaining the certificate or failing to comply with

reasonable requests of the Secretary for information) could not be performed by an organization, and therefore an "owner" must be an individual. Because these acts may be attributed to a corporation through the actions of principals or agents, we hold that this supposed "context" does not disprove the rule.

Next, the Appellants argue that the implementing regulation of the owner-operator ban supports their narrow reading. The relevant regulation states:

[Centers for Medicare and Medicaid Services ("CMS")] may initiate adverse action to suspend, limit or revoke any CLIA certificate if CMS finds that a laboratory's owner or operator or one of its employees has ... [w]ithin the preceding two-year period, owned or operated a laboratory that had its CLIA certificate revoked. (This provision applies only to the owner or operator, not to all of the laboratory's employees.)

42 C.F.R. § 493.1840(a)(8). Appellants argue that the regulation therefore supports their argument that the provision should not be applied to persons not connected with the disciplined behavior. But the plain text does not support this reading. Rather, it simply makes clear that the provision, while clearly applying to owners such as OMG, does not apply to rank-and-file-employees. This does not mean that employees will not be adversely affected by the operation of the provision in situations such as this one, where laboratories are forced to close because of action taken against the owner. But under the terms of the statutes the employees are not prohibited from owning or operating a laboratory within two years of an action taken not against them, but against the owner or operator of a laboratory where they work. Accordingly, the regulation does not support Appellants' reading.

Therefore, because 1 U.S.C. § 1 makes clear that OMG is a person for the pur-

poses of 42 U.S.C. § 263a(i)(3), the Appellants' argument must fail.

### C.

■ Appellants next argue that "[t]he failure of the Administrative Law Judge and Departmental Appeals Board, Appellate Division to hold a hearing in this case clearly violates the right of due process of Petitioners because there has been no implication of any wrongdoing by any of the Petitioners." In support, Appellants cite *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) for the proposition that "some form of hearing is required before an individual is finally deprived of a property interest." *Id.* at 333.

*Mathews* simply does not provide adequate support for Appellants' argument. In *Mathews,* the plaintiff was denied an *evidentiary* hearing prior to a deprivation of benefits. Here, because the ALJ found that there were no disputed issues of material fact, he rendered summary disposition on the briefs. While the question of whether agencies may render summary judgments without running afoul of the hearing requirement is still open to the extent that the Supreme Court has not spoken expressly to that question, persuasive authority from our sister circuits states that agencies may do so. *See, e.g., Pennsylvania v. Riley,* 84 F.3d 125, 130 (3d Cir.1996) ("An administrative agency need not provide an evidentiary hearing when there are no disputed material issues of fact."); and *Puerto Rico Aqueduct and Sewer Auth. v. E.P.A.,* 35 F.3d 600, 606 (1st Cir.1994) ("Due process simply does not require an agency to convene an evidentiary hearing when it appears conclusively from the papers that, on the available evidence, the case only can be decided one way."). Agreeing with our sister circuits, we find that the ALJ's summary disposition did not violate the due process rights of petitioners.

### D.

■ Finally, Appellants argue that "[t]he ALJ's conclusion of law that revoking the ... CLIA certificates would not frustrate the intent of 42 U.S.C. § 1395nn(b)(2) ... is clearly erroneous." This claim also is without merit.

In 1992, Congress passed legislation to combat kickbacks to physicians for referral of lab tests. *See* 42 U.S.C. § 1395nn. This statute, (commonly known as "Stark" after the statute's author, California Representative Fortney H. "Pete" Stark), prohibits referrals to laboratories in which the doctor has an ownership interest unless the laboratory falls into an exception under the act. 42 U.S.C. § 1395nn(a)(1)(A). Most prominent among these exceptions is a provision which allows referrals to labs that are part of the same "group practice." 42 U.S.C. § 1395nn(b)(2). Appellants are therefore correct in their assessment that Congress created an incentive for doctors to enter into group practices to take advantage of this exception.

But the Appellants falter on the next step in their argument. They suggest that they "must" operate their labs in accordance with Stark, and that they "were required to own and operate their clinical laboratories in compliance with the applicable exceptions to Stark." This is only true to the extent that the doctors wished to maintain ownership interests in the labs, and wanted to make referrals to the same. Nonetheless, the Appellants assert that the incentive to join group practice would be defeated by applying 42 U.S.C. § 263a(I)(3) against group-practice corporations. While the incentives are in tension, there is nothing to suggest that this court should deviate from the path of the text. If a doctor who has ownership interests in more than one CLIA laboratory wishes to make referrals to a laboratory

she has an ownership interest in, she may do so by forming a group practice. In doing so, however, she links the CLIA certificates under a common owner, and may be subject to having all such lab licenses revoked by a single error. It is a harsh rule, but one which is dictated by the statute. At some point in the future, Congress may wish to reexamine the interaction of Stark and 42 U.S.C. § 263a(i)(3). While that *legislative* body may choose to change the law to avoid the kind of results reached here, this court is bound to apply the law as it is written.

### III.

Accordingly, the final agency decision sustaining revocation of Appellants' CLIA certificates is AFFIRMED.